ECF

ORIGINAL

FILED
OCT 2 2003
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RECORD STEEL AND CONSTRUCTION, INC., Plaintiff, | ) | No. 03-2274C |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

**COMPLAINT**

I. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. § 1491, *et seq.* and 41 U.S.C. § 601, *et seq.*

II. PARTIES

2. The Plaintiff is Record Steel and Construction, Inc., an Idaho corporation.

3. The Defendant is the United States of America, acting by and through the United States Department of the Army, Corps of Engineers, Omaha District.

III. FACTS

4. Prior hereto Plaintiff and Defendant entered into a design/build contract, Contract DACA67-00-D-0202 FY 2000 Dormitory, Offutt Air Force Base, Nebraska. In connection therewith and on or about June 9, 2000, Defendant awarded Task Order No. 1 under the referenced Contract to Plaintiff at a basic award price of $8,799,428. The contract work involved the design and construction of a dormitory at Offutt Air Force Base, Nebraska.

5. The Request for Proposals clearly provided at Section 01005, Paragraph 1.7 - Foundation System and Design, that "[d]esign of foundation

components shall be the responsibility of the contractor." In addition, the Contract provided, at Paragraph 1.7.1 - Design Parameters, the following:

> "Parameters used for foundation design, including overexcavation and compaction requirements, the allowable soil bearing pressure, lateral earth pressure coefficients and design footing depths shall be in accordance with the Final Foundation Analysis report provided."

6. The Foundation Analysis Report ("Report") provided recommendations, not requirements, with respect to the structural foundations. For example, the Report outlined "Recommended Improvement Program" at Paragraph 1.14.1. There was no requirement of overexcavation for foundation components. Instead, Defendant's Report recommended overexcavation but left the ultimate decision, including the ultimate design of the foundations, to Plaintiff.

7. On January 14, 2000 and on March 14, 2000, Plaintiff corresponded with Defendant and, amongst other things, indicated that overexcavation for foundation work was not required. Plaintiff pointed out in its correspondence that the borings, as reflected in the logs of borings for the Project did not cover the area on the northern side of the property, which was the intended construction site by Plaintiff. As a result, Plaintiff indicated that it would incorporate new borings into the design, and that the results, the geotechnical review and investigation would reflect the fact that overexcavation for foundations was not a design requirement.

8. On or about August 23, 2000, Plaintiff's geotechnical engineers, Great Plains Testing Laboratories, Inc., a highly experienced geotechnical firm located in Nebraska, published its "Report of Geotechnical Investigation for FY 2000 Dormitory, Nelson Drive, Offutt Air Force Base, Bellevue, Nebraska" ("Geotechnical Report"). That

Geotechnical Report specifically include the finding that overexcavation was completely unnecessary for the integrity of the design.

9. During subsequent design review meetings, the parties agreed that nuclear density testing would be conducted at the actual footing depth to confirm that overexcavation was unnecessary and that the Great Plains Geotechnical Report correctly analyzed the field conditions as encountered.

10. On October 10, 2000, Great Plains reported that its tests indicated that native soil was suitable to accept building footings.

11. Thereafter and on or about October 19, 2000, notwithstanding the uncontradicted reports, Defendant directed Plaintiff to overexcavate for foundation work.

12. Defendant's directive was, in effect, a constructive change in that the Government usurped Plaintiff's right and obligation to design the Project, placing itself as designer rather than Plaintiff, and requiring work to be done (namely, overexcavation) which was considerably more time consuming and completely unnecessary for the structural and design integrity of the Project.

13. Prior hereto and on or about April 25, 2002, Plaintiff submitted its Certified Claim with respect to the Defendant's directive and constructive change requiring overexcavation of the building footprint. Plaintiff submitted a monetary claim seeking an equitable adjustment in the amount of $188,380, together with a request for a contract time extension by reason of the untimely directive by Defendant which resulted in work which otherwise was scheduled to be done in appropriate weather to be performed in inclement weather at considerably greater time duration and cost.

14. On or about November 7, 2002, Defendant issued its Contracting Officer's Final Decision in which the Contracting Officer denied Plaintiff's claim in its entirety. Copies of the Contracting Officer's Final Decision and Plaintiff's Request for Equitable Adjustment are collectively attached hereto and incorporated herein as Exhibit "A". Prerequisite jurisdictional matters with respect to the filing of this Complaint and with respect to the claims asserted in this Complaint have been met.

## COUNT I

(Constructive Change)

15. Incorporate by reference the allegations set forth heretofore.

16. Defendant's usurpation of Plaintiff's right and obligation to design the Project and its directive that Plaintiff overexcavate for foundation work constituted a constructive change under the Changes Clause and entitles Plaintiff to an equitable adjustment representing the fair and reasonable costs which it incurred as a result of the changes directed by the Government in an amount not less than $188,380, together with an appropriate contract extension and pre-judgment interest.

## COUNT II

(Extra Work)

17. Incorporate by reference the allegations set forth heretofore.

18. Defendant's directive that Plaintiff overexcavate and its usurpation of Plaintiff's right and obligation to design the Project resulted in extra work for which Plaintiff is entitled to an equitable adjustment in an amount not less than $188,380,

together with an appropriate contract time extension and pre-judgment interest.

COUNT III

(Declaratory Relief Relative to Contractor Evaluation)

19. Incorporate by reference the allegations set forth heretofore.

20. Notwithstanding Defendant's directive that Plaintiff perform extra work and Defendant's directive which constituted a constructive change, Defendant, having refused to recognize its responsibility to direct an equitable adjustment and to extend contract time, authored a highly inflammatory and false evaluation summary with respect to Plaintiff, which had the effect of substantially damaging Plaintiff's reputation in the construction community and with respect to like construction projects.

21. It would be just and proper for the Court upon the hearing of the evidence in this case to direct the Government to rescind the current evaluation and to prepare an evaluation with respect to Plaintiff consistent with fact.

WHEREFORE, Plaintiff requests that this Court:

1. Enter a judgment in favor of Plaintiff for its costs incurred in connection with the constructive change and the extra work directed by Defendant in an amount not less than $188,380, together with interest, costs and a time extension as appropriate.

2. Enter a declaratory judgment directing Defendant to rescind and revise its evaluation.

/ / /

3. For such other and further relief as may be deemed just and proper by this Court.

DATED: October 1, 2003.

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706

W:\WORK\KAG\Record Steel\Offutt.Over Exc\RSCI.Complaint.wpd

DEPARTMENT OF THE ARMY
CORPS OF ENGINEERS, OMAHA DISTRICT
106 SOUTH 15TH STREET
OMAHA, NEBRASKA 68102-1618

RECEIVED
NOV 1 2 2002
RSCI

REPLY TO:

Office of Counsel

November 7, 2002

CERTIFIED MAIL
RETURN RECEIPT
REQUESTED

Mr. Clayton Record
RSCI
1854 East Lanark Street
Meridian, Idaho 83642

Dear Mr. Record:

I have reviewed your request for additional costs which you claimed were incurred during the performance of Contract DACA67-00-D-0202, FY 2000 Dormitory, Offutt AFB, Nebraska. Your request seeks $137,714 for costs associated with over-excavation beneath the footings of the subject dormitory. My determination is to deny your claim. This is my Final Decision.

My findings and determination on this claim are set forth below:

FINDINGS OF FACT

1. On June 9, 2000, the Corps of Engineers, Omaha District (hereinafter, "the Corps"), awarded Task Order #1 under the above referenced contract ("the contract") to RSCI at a (basic award) price of $8,799,428. The contract work involved the design and construction ("design-build") of a dormitory at Offutt AFB, Nebraska.

2. The RFP included a Foundation Analysis Report. Use of the Foundation Analysis Report was required by Section 01005, page 9, section 1.7.1, and the Report included a requirement to over excavate the footings as part of the design and construction.

3. By its letter of January 14, 2000, RSCI submitted its price proposal on the subject contract. RSCI advised at the time that it believed that over excavation for foundations was not required, but stated that if over excavation was required, it would be performed without additional cost to the Government.

4. RSCI advances the following argument, from its letter of April 25, 2002, in support of its request for an equitable adjustment:

a. The January 14, 2000 cover letter for RSCI's proposal indicated its belief that "over excavation for foundations will not be required." This statement was based upon information and guidance by RSCI's subcontractor, Great Plains Testing Laboratories.

b. At the pre-design meeting, the over excavation was discussed and it was decided that RSCI would have Great Plains conduct a field investigation of the site to provide further information to it and the Corps as to the necessity for over excavation.

EXHIBIT A, PAGE 1 OF 17

c. Great Plains conducted the testing indicated above, and Mr. Christiansen of that firm provided a report on August 23, 2000, to the effect that in his opinion, it would be sufficient to continue with the design based on the use of native soil and without over excavation beneath the footings.

d. During the 100% Civil &Structural/60% All Other Design Review, the Corps noted the conflict between the RFP "recommendation" [RSCI April 25, 2002 letter] to over excavate, and the Great Plains geotechnical report to the effect that over excavation was not necessary. The issue was raised again at the October 3, 2000 Design Review meeting, and it was agreed that nuclear density testing would be conducted at the actual footing depth. Samples for concurrent testing were taken on October 6, 2000.

e. On October 10, 2000, Great Plains reported to RSCI that its tests indicated that the native soil was suitable to accept the building footings. On October 19, RSCI was notified by the Corps to over excavate due to the "existing soil conditions confirmed by our [the Government's] testing laboratory as well as the test data provided by your firm", and reduced the required density to 92%. A second Corps letter was issued shortly thereafter, advising that the over excavated soil could be reinstalled and compacted to meet the requirement of backfill under the footings after the over excavation.

By letter dated April 25, 2002, RSCI submitted a certified claim as described above.

5. On or about September 20, 2002, you received a letter from the Contracting Officer setting out the above-recited facts, with the invitation to make appropriate corrections or additions set forth. No reply was received.

<u>DETERMINATION</u>

6. The claim of RSCI is hereby denied for the reasons stated below.

a. RSCI was in possession of the solicitation documents, including Section 01005, subsection 1.7.1, which included a requirement to over excavate the footings as part of the design and construction.

b. RSCI stated in its January 14, 2000 letter, that if over excavation was required, it would be performed without additional cost to the Government.

c. RSCI proposed an alternative to this requirement in its January 14, 2000 letter, indicating its belief that over excavation for the foundations would not be necessary.

d. Neither this belief, nor the subsequent testing and analysis, relieved RSCI from the unambiguous obligation to conform to the specifications as written.

e. Both the Government and RSCI made efforts to re-evaluate the contract requirement for over excavation. Notwithstanding the Government's good faith consideration of RSCI's alternative

foundation design proposal, the Government did not agree to the proposal nor did the Government execute a modification altering RSCI's responsibilities pursuant to the contract.

f. RSCI did no more work, in over excavating the foundations, than was explicitly required by the contract. There is, therefore, no basis upon which to find merit in your claim.

CONCLUSION

This is the final decision of the Contracting Officer. You may appeal within ninety days from the date you receive this decision by giving written notice to the Armed Services Board of Contract Appeals, Skyline 6, Room 703, 5109 Leesburg Pike, Falls Church, Virginia 22041-3201. You should also provide a copy of the notice to the Contracting Officer. The notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Claims Court within twelve months of the day you receive this decision.

The Board's rules provide for an Expedited Small Claims procedure and an Accelerated Claim Procedure. If you qualify and choose to proceed under either of the procedures, you should refer to the enclosed interim rules.

Sincerely,

Phillip E. Holman

Phillip E. Holman
Contracting Officer

Enclosure

## Request for Equitable Adjustment Narrative
## OverExcavation of Building Footprint

The following narrative serves as documentation and background for the attached modification request PCO #011 and Certification of Claim of which RSCI notified the COE previously in serial letter 296-00002-00046. This request documents the direct and impacted costs due to the over excavation, delays due to forcing weather dependent work into inclement weather conditions and the extension of the project as outlined below.

RSCI stated in the letter accompanying our proposal on January 14, 2000 that "the borings taken for this project do no cover the area on the northern site and intend to incorporate new borings into our design if awarded this project. We feel confident that over excavation for foundations will not be required." This statement was based on information and guidance provided by a local geotechnical firm, Great Plains Testing Laboratories. At the pre-design meeting after award of the project the exclusion of over excavation was discussed and it was determined that RSCI would again employ Great Plains, this time to conduct a field investigation of the site to provide RSCI & COE with documentation that over excavation would not be needed. If this data were found to be satisfactory then RSCI would continue design without over excavation as proposed.

The independent site investigation was conducted by Great Plains under the direction of John Christiansen a registered professional engineer in the state of Nebraska. Included is a copy of the test results and conclusions and recommendations from this site investigation as submitted by Mr. Christiansen on August 23, 2000. Based on these findings RSCI continued with the design based on the use of native soil and no over excavation beneath the footings.

A limited Notice to Proceed for clearing, grubbing and grading was issued to RSCI on September 22, 2000 and this work commenced on the site September 25, 2000. During the 100% Civil & Structural/60% All Other design review Mr. Brad Jones of the COE raised the question of the conflict between the RFP recommendation to over excavate and the geotechnical recommendation to the contrary. The comment asked for the basis for this recommendation to not over excavate, which had already been provided in the Great Plains Investigation report, and did not state any disagreement with the decision. The issue was brought up again in the Design Review meeting conducted on October 3, 2000 at which both Mr. Jones and Mr. Christiansen were present and able to discuss the test results and recommendation. It was determined that Great Plains would conduct nuclear density testing of the native soil at actual footing depth since the building footprint had been excavated and provide to Mr. Brad Jones, see attached copy that was sent to RSCI the following day. The COE was not satisfied with the results although the majority were in the mid 90% range and requested that additional samples be taken by Great Plains and provided to the COE for testing from actual footing depth. The samples were taken on October 6, 2000 due to a COE approved weather day on October 5, 2000. The COE and Great Plains took the samples to conduct concurrent testing with the promise of a quick decision upon completion of testing. Another limited NTP was issued for utility work on

EXHIBIT A, PAGE 4 OF 17

October 7, 2000 and stated "foundation work will be withheld until the soil issue is resolved."

Associated Brigham Contractors had been scheduled to arrive on site to begin work on October 5, 2000 on the basis that the over excavation did not appear to be a hold up prior to the design review meeting and were rescheduled to October 12, 2000 along with the rebar delivery. ABC was again reschudeled for October 16, 2000 awaiting test results and a decision by the COE. Great Plains testing was completed on October 10, 2000 and results again verified that the native soils were not collapse susceptible and were suitable to accept the building footings. Based on this information and without any information back from Mr. Jones a preparatory meeting was conducted with the COE on site and ABC for forming and placing the foundation on October 16, 2000 and one for footing excavation on October 17, 2000 with work for both of these phases beginning that same day.

On October 19, 2000 RSCI received a notice that we were to over excavate due to the "existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm" and reduced density requirements to 92%. RSCI responded with the attached letter, which includes the letter from Mr. John Christiansen stating that the results are in favor of not over excavating with all the substantiating data.

RSCI began the process of complying with the COE directive to over excavate by removing formwork, moving all control points outside of over excavation limits and over excavating foundation soil. On October 23, 2000 RSCI received another letter from the COE supplementing their October 19, 2000 letter that the over excavated soil could be reinstalled and compacted to meet the requirement of backfill under the footings after the over excavation.

The NTP for foundations and foundation walls was received by RSCI on October 26, 2000. Over the 16 work days immediately following the COE directive to over excavate 7 of these were COE approved weather days which caused conditions in the foundation that were much worse on the over excavated areas than the native soil, as documented in photographs which can be made available. These conditions allowed only a small section of footing to be placed during this time period and caused ABC to abandon footings and work on the wall forming for this length of foundation to be able to work at all. ABC was not able to finish exterior footings until November 25, 2000 which caused the work on the walls to continue to push back and not be able to complete before the extreme cold and windy weather conditions that started on December 11, 2000 and continued causing RSCI to shut down the job for 2 weeks on December 19, 2000 after 4 of the last 6 days were COE approved weather days.

With the preliminary schedule and the more aggressive construction schedule that were provided the COE, completion of footings would have been completed prior to the two weeks of rain delayed work if allowed to start when originally scheduled without over excavation and utilizing the 6 day work week of ABC. With these footings completed work on the walls could have been continued although slowed during this time frame still

EXHIBIT A, PAGE 5 OF 17

allowing for the entire foundation to be completed prior to the next extreme weather period that forced the temporary job shutdown in December. With the delays that the over excavation and then the weather impacts, which the decision pushed the work into, the foundation was unable to be completed after resuming work again in January, 2001 until February 6, 2001 due to the continued effects of the extreme weather in December and January.

Using the longer activity durations of the preliminary schedule, instead of the aggressive construction schedule dates, a completion date of December 8, 2000 could have been easily attained based on past experience by both RSCI and ABC as shown in the attached Schedule Analysis. With the over excavation and associated delays that pushed completion to February 6, 2001 RSCI contends requests a 60-calendar day extension to the completion of the project. RSCI also requests the equitable adjustment of $188,380 be made as detailed in the attached potential change order request with supporting documentation.

Schedule Analysis

Sheet 1 of 1

RSCI for U.S. Army Corps of Engineers
FY00 Design/Build Dormitory
Schedule Analysis
Time Impact Due to OverExcavation

| Activity ID | Activity Description | Actual Duration | Late Finish |
|---|---|---|---|
| Projected w/out OverEx | | | |
| A10590P | Excavation Basement N Wing | 0 | 03OCT00A |
| A10750P | Excavation Basement S Wing | 0 | 07OCT00A |
| A10880P | Frm/Rbr/Plc/Strp Ftgs S Wing | 0 | 16OCT00A |
| …10820P | Frm/Rbr/Plc/Strp Walls and Beams - S Wing | 0 | 07NOV00A |
| …0730P | Frm/Rbr/PlcStrp Ftgs N Wing | 0 | 16NOV00A |
| A10810P | Frm/Rbr/Plc/Strp Walls and Beams - N Wing | 0 | 08DEC00A |
| A00000P | Completion of Concrete Foundation | 0 | 08DEC00A |
| As-Built w/ OverEx | | | |
| A10590A | Excavation Basement N Wing | 0 | 27OCT00A |
| A10750A | Excavation Basement S Wing | 0 | 03NOV00A |
| A10730A | Frm/Rbr/Plc/Strp Ftgs N Wing | 0 | 17NOV00A |
| A10810A | Frm/Rbr/Plc/Strp Walls and Beams - N Wing | 0 | 04DEC00A |
| A10880A | Frm/Rbr/Plc/Strp Ftgs S Wing | 0 | 09DEC00A |
| A10820A | Frm/Rbr/Plc/Strp Walls and Beams - S Wing | 0 | 06FEB01A |
| A00000A | Completion of Concrete Foundation | 0 | 06FEB01A |
| Time Impact Due to OverEx | | | |
| A10590T | Excavation Basement N Wing | 24 | 27OCT00A |
| A10750T | Excavation Basement S Wing | 27 | 03NOV00A |
| A10730T | Frm/Rbr/Plc/Strp Ftgs N Wing | 1 | 17NOV00A |
| …310T | Frm/Rbr/Plc/Strp Walls and Beams - N Wing | 0 | 04DEC00A |
| …0880T | Frm/Rbr/Plc/Strp Ftgs S Wing | 54 | 09DEC00A |
| A10820T | Frm/Rbr/Plc/Strp Walls and Beams - S Wing | 91 | 06FEB01A |
| A00000T | Completion of Concrete Foundation | 60 | 06FEB01A |




EXHIBIT A PAGE 7 OF 17

# Record Steel and Construction Inc.

FY00 Design/Build Dormitory Project

Date: 4/12/02

Ref: COE Directed Overexcavation of Building

Scope Of Work:
Covers direct cost of overexcavation, down time & delays for Concrete Subcontractor, Costs associated with the winterization and dewatering to complete concrete placement, Costs associated with work to prep and place basement SOG.

## Estimate

### Direct Labor

| Item / Description | Quantity | Units | Manhours per Unit | Manhours | Rate | Total | |
|---|---|---|---|---|---|---|---|
| Winterization/Dewatering (American Labor Force) | 1.0 | | | | | $ 914.18 | |
| Winterization/Dewatering/Earthwork (Labor Ready) | 1.0 | | | | | $ 13,043.38 | |
| | | | | | | $ | |
| | | Total Hours | | 0.00 | | | Total Direct Labor $ 13,957.56 |

### Subcontract

| Item / Description | Quantity | Units | Cost Per Unit | Total | |
|---|---|---|---|---|---|
| Overexcavation (Fucinaro) | 1.0 | | | $ 13,000.00 | |
| Down Time and Rework (ABC) | 1.0 | | | $ 5,758.00 | |
| Geotech Analysis & Testing (Great Plains) | 1.0 | | | $ 8,144.00 | |
| | | | | $ | |
| | | | | | Total Subcontract $ 26,902.00 |

### Materials

| Item / Description | Quantity | Units | Cost per Unit | Total | |
|---|---|---|---|---|---|
| Small tools/supplies @ 3% of RSCI direct labor | - | | - | $ 418.73 | |
| Propane, hoses, fittings (SAPP Bros) | 1 | | | $ 2,502.88 | |
| Concrete Blankets, Reinforced Poly (Stetson) | 1 | | | $ 2,794.52 | |
| Winter Service Charge on Concrete after Dec. 8 | 1 | | | $ 1,452.00 | |
| | | | | | Total Materials $ 7,168.13 |

### Equipment

| Item / Description | Quantity | Hours Per Unit | Total Hours | Rental Cost Per Hour | Operating Cost Per Hour | Total | |
|---|---|---|---|---|---|---|---|
| Pumps, Hoses, Fans (United Rentals) | 1.0 | | | | $ - | $ 1,608.74 | |
| Tank, Heaters, Pumps, Hoses, Equipment (Neb. Rents) | 1.0 | | | | $ - | $ 24,014.25 | |
| | | | | | | | Total Eqpt. $ 25,702.99 |

| | | Total |
|---|---|---|
| | | $ 73,730.68 |
| | Field OH $1,334.18/day @ 60 Days | $ 80,050.80 |
| | Home Office Overhead 11.12% | $ 17,100.50 |
| | Profit on Subs @ 7.0% | $ 1,883.14 |
| | Profit on Self-performed @ 10.0% | $ 14,398.00 |
| TOTAL COST THIS PROPOSAL | Bond 0.65 % | $ 1,216.56 |
| TOTAL COST THIS PROPOSAL ROUNDED | Total | $ 188,379.67 |
| | | $ 188,380 |

This proposal is good for 30 days. We reserve the right to make corrections to the pricing of the proposal for any errors or omissions

[Page] of 1

PCO0011\Sheet 1

EXHIBIT A, PAGE 8 OF 17

**FAR 52.233-1 Disputes**

**Certification of Claim**

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.

Clayton Record
President, RSCI

American Labor Force & Labor Ready Invoices

| Invoice # | Cost |
|---|---|
| 11/17/2000 | $914.18 |
| 70261610 | $130.00 |
| 1163466 | $988.00 |
| 1217695 | $143.00 |
| 1251017 | $897.00 |
| 1270889 | $1,254.50 |
| 1293309 | $877.50 |
| 1293310 | $404.25 |
| 77111610 | $586.00 |
| 77101610 | $520.00 |
| 77691610 | $630.50 |
| 77701610 | $117.60 |
| 30501876 | $182.00 |
| 78221610 | $135.98 |
| 78211610 | $445.25 |
| SubTotal | $8,227.76 |

| Invoice # | Cost |
|---|---|
| 78671610 | $425.75 |
| 79151610 | $578.50 |
| 80191610 | $631.15 |
| 80771610 | $780.45 |
| 81401610 | $1,805.88 |
| 82021610 | $378.53 |
| 82011610 | $687.20 |
| 82591610 | $742.36 |
| 82581610 | $656.51 |
| 83281610 | $492.45 |
| 83271610 | $370.50 |
| 84041610 | $1,003.29 |
| 84031610 | $656.50 |
| 84731610 | $764.40 |
| 84721610 | $614.25 |
| 85461610 | $975.00 |
| 85471610 | $643.13 |
| 86211610 | $1,147.26 |
| 86911610 | $1,040.00 |
| 87481610 | $968.50 |
| 88071610 | $624.00 |
| 88761610 | $975.00 |
| 89461610 | $500.50 |
| 62271612 | $78.00 |
| 90261610 | $234.00 |
| 62701610 | $1,066.00 |
| 91061610 | $1,612.00 |
| 91681610 | $604.50 |
| 92231610 | $773.50 |
| 63851610 | $318.50 |
| 92811610 | $676.00 |
| 39981112 | $95.60 |
| SubTotal | $22,919.21 |

| Description | Cost |
|---|---|
| Winterization/Dewatering to Foundation Completion | $8,227.76 |
| Extra Work for Backfill & SOG Prep 20% Time | $5,729.80 |
| Total | $13,957.56 |

| | |
|---|---|
| American Labor Force (11/17/00) | $914.18 |
| Labor Ready | $13,043.38 |
| Total | $13,957.56 |

EXHIBIT A, PAGE 16 OF 17

Subcontractor Costs

| | | |
|---|---|---|
| Fucinaro | Overexcavate Foundation | $13,000.00 |
| ABC | Down Time & Re-Excavation | $5,758.00 |
| Great Plains | Geotech Testing & Analysis/Additional Testing | $8,144.00 |
| | | $26,902.00 |

EXHIBIT A, PAGE 11 OF 17

Sapp Bros. Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 1543 | Propane | $79.88 |
| 15?? | Propane Hose | $508.20 |
| 24435 | Propane | $370.10 |
| 357596 | Propane | $273.15 |
| 24102 | Propane | $425.39 |
| 416400 | Diesel | $100.10 |
| 22627 | Propane | $206.06 |
| 418215 | Diesel | $80.03 |
| 22652 | Propane | $359.76 |
| 422362 | Diesel | $100.21 |
| | Total | $2,502.88 |

EXHIBIT A PAGE 12 OF 17

Stetson Building Products Invoices

| Invoice # | Item Description | Cost |
| --- | --- | --- |
| 871079 | Curing Blankets | $1,534.93 |
| 871856 | Reinforced Poly | $170.40 |
| 873542 | Curing Blankets | $613.97 |
| 882040 | Poly & Tape | $219.62 |
| 888528 | Reinforced Poly | $255.60 |
| | Total | $2,794.52 |

Ready Mixed Winter Service Charges

| Invoice # | Item Description | Cost |
|---|---|---|
| 5110018454 | Winter Service Charge | $10.50 |
| 5110018510 | Winter Service Charge | $51.00 |
| 5110018623 | Winter Service Charge | $250.50 |
| 5110018769 | Winter Service Charge | $16.50 |
| 5110018742 | Winter Service Charge | $88.50 |
| 5110018741 | Winter Service Charge | $180.00 |
| 5110018853 | Winter Service Charge | $24.00 |
| 5110018835 | Winter Service Charge | $46.50 |
| 5110018894 | Winter Service Charge | $9.00 |
| 5110019003 | Winter Service Charge | $49.50 |
| 1710013102 | Winter Service Charge | $99.00 |
| 5110019829 | Winter Service Charge | $627.00 |
| | Total | $1,452.00 |

EXHIBIT A, PAGE 14 OF 17

United Rental Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 14005110-001 | Pump | $385.98 |
| 17408360-003 | Fans | $320.69 |
| 17542882-003 | Fans | $320.69 |
| 17542882-004 | Fans | $320.69 |
| 17542882-005 | Fans | $320.69 |
| | Total | $1,668.74 |

EXHIBIT A PAGE 15 OF 17

Nebraska Rents Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 02016870 | 2 Heaters & Propane Tank | $702.90 |
| 02016868 | Backhoe & Compactors | $1,767.90 |
| 02018281 | Heater & Propane Tank | $372.75 |
| 02018279 | Heater | $262.50 |
| 02018869 | Heater & Propane Tank | $372.75 |
| 02018866 | Backhoe & Compactor | $1,757.25 |
| 02018865 | Heater | $262.50 |
| 02018864 | Forklift | $4,153.50 |
| 02019007 | Roller Compactor | $684.80 |
| 02019485 | Heater | $236.37 |
| 02019486 | Heater | $88.40 |
| 02019711 | Backhoe | $1,278.00 |
| 02019712 | Pump & Hoses | $435.75 |
| 02019993 | Skid Steer Loader | $1,874.25 |
| 02020075 | Skid Steer Loader | $427.33 |
| 02020273 | Skid Steer Loader | $640.07 |
| 02020491 | Pumps & Hoses | $641.55 |
| 02020636 | Pump & Hoses | $435.75 |
| 02020756 | Pumps & Hoses | $451.50 |
| 02021133 | Pump & Hoses | $115.50 |
| 02021120 | Pump & Hoses | $309.75 |
| 02023544 | Skid Steer Loader | $1,384.50 |
| 02023542 | Pump & Hoses | $519.75 |
| 02024015 | Pump | $165.90 |
| 02024350 | Skid Steer Loader | $591.08 |
| 02024478 | Skid Steer Loader | $1,384.50 |
| 02025433 | Concrete Bucket | $158.69 |
| 02025428 | Skid Steer Loader | $807.81 |
| 02025884 | Vibratory Compactor | $1,731.95 |
| | Total | $24,014.25 |

EXHIBIT A, PAGE 16 OF 17

| Field Office Expense Element | Total | Per Diem | Source |
|---|---|---|---|
| Insurance & Builder's Risk | $ 14,045.00 | $ 25.54 | Actual |
| Safety Meetings/Safety Supplies | $ 7,206.00 | $ 13.10 | Actual |
| Construction Dumpster/Small Tools & Supplies | $ 40,320.00 | $ 73.31 | Actual |
| Temporary Phone/Radio | $ 16,786.00 | $ 30.52 | Actual |
| Temporary Electrical | $ 548.00 | $ 1.00 | Actual |
| Portable Toilet | $ 5,500.00 | $ 10.00 | Actual |
| Field Office | $ 13,226.00 | $ 24.05 | Actual |
| Office Supplies | $ 15,315.00 | $ 27.85 | Actual |
| Printing Costs | $ 4,282.00 | $ 7.79 | Actual |
| Air Fare | $ 15,134.00 | $ 27.52 | Actual |
| Fuel | $ 10,500.00 | $ 19.09 | Actual |
| Equipment | | $ 245.57 | Actual |
| Superintendent | | $ 250.34 | Actual Salary |
| Quality Control Manager | | $ 232.63 | Actual Salary |
| Construction Clerk | | $ 75.03 | Actual Salary |
| Project Manager | | $ 270.86 | Actual Salary |
| **Total Per Day** | | **$ 1,334.18** | |
| | | | |
| Number of Calendar Days in Contract Term: | 550 | | |
| | | | |
| | Hourly Rate | Weekly Rate | Calendar Day Rate |
| Superintendent | $ 43.81 | $ 1,752.40 | $ 250.34 |
| Quality Control Manager | $ 40.71 | $ 1,628.40 | $ 232.63 |
| Construction Clerk | $ 13.13 | $ 525.20 | $ 75.03 |
| Project Manager | $ 47.40 | $ 1,896.00 | $ 270.86 |
| | | | |
| | Monthly | Daily | |
| R04 White Chevy Truck | $ 750.00 | $ 24.59 | |
| R07 White Chevy Truck | $ 750.00 | $ 24.59 | |
| V03.1 White Dodge Truck | $ 750.00 | $ 24.59 | |
| Miscellaneous Average | $ 5,240.00 | $ 171.80 | |
| | Total | $ 245.57 | |

S:\Jobs\296 Offut Dorm\Legal\OverEx Claim\[FOOH Per Diem Rate Worksheet.xls]Sheet1

EXHIBIT A, PAGE 17 OF 17