No. 03-2274C
Judge Lettow

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

RECORD STEEL AND CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

ROBERT E. KIRSCHMAN, JR.
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

May 6, 2004

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 2

I. Nature of the Case . . . . . 2

II. Statement of Facts . . . . . 2

ARGUMENT . . . . . 6

I. Standards of Review . . . . . 6

II. The United States Is Entitled To Judgment As A Matter of Law With Regards To The First And Second Counts Of Record Steel's Complaint Because The Contract Expressly Requires That Record Steel Excavate The Foundation . . . . . 8

III. The Court Lacks Tucker Act Jurisdiction To Entertain the Third Count (Declaratory Relief) of Record Steel's Complaint . . . . . 12

CONCLUSION . . . . . 13

## TABLE OF AUTHORITIES

**CASES:** **PAGE(S)**

Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 8

Alder Terrace, Inc. v. United States, 161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Arizona v. United States, 216 Ct. Cl. 221, 575 F.2d 855 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bowen v. United States, 49 Fed. Cl. 673 (2001),
aff'd, 292 F.3d 1383 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Craft Mach. Works, Inc. v. United States, 926 F.2d 1110 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . 8

Dynalectron Corp. v. United States, 4 Cl. Ct. 424,
aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Elden v. United States, 223 Ct. Cl. 239, 617 F.2d 254 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fidelity Construction Co. v. United States, 700 F.2d 1379 (Fed. Cir.),
cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

First Hartford Corp. v. United States, 194 F.3d 1279 (Fed. Cir.1999) . . . . . . . . . . . . . . . . . . . . 13

Fort Vancouver Plywood Co. v. United States, 860 F.2d 409 (Fed. Cir. 1988) . . . . . . . . . . . . . . 9

Gould v. United States, 935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 8

H.L.C. & Assoc. v. United States, 176 Ct. Cl. 285, 367 F.2d 586 (1966) . . . . . . . . . . . . . . . . . . 8

Hunt Constr. Group, Inc. v. United States, 48 Fed. Cl. 456 (2001),
aff'd, 281 F.3d 1369 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

J.H. Miles & Co., Inc. v. United States, 3 Cl. Ct. 10 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . 7

Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . 7

Paxson Elec. Co. v. United States, 14 Cl. Ct. 634 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Service Technicians, Inc. v. United States, 37 Fed. Cl. 383 (1997) . . . . . . . . . . . . . . . . . . . . . . . . 8

Stone Forest Indus. v. United States, 32 Fed. Cl. 424 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . 7

Trauma Serv. Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . 7

United States v. King, 395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

United States v. Testan, 424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Varilease Tech. Group, Inc. v. United States, 289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . 8

**STATUTES:**

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1491(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**MISCELLANEOUS:**

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

WEBSTER'S NEW COLLEGIATE DICTIONARY (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RECORD STEEL AND CONSTRUCTION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2274C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS**

Pursuant to Rule 56 of the Rules of United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in its favor with regards to the first and second counts of plaintiff's complaint because there are no genuine issues of material fact in dispute and defendant is entitled to judgment as a matter of law as to those counts. Further, defendant respectfully requests that the Court dismiss the third count of plaintiff's complaint (declaratory relief) for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

In support of defendant's motion, we rely upon the complaint, the following brief, the proposed findings of uncontroverted facts, and the attached appendix.

**STATEMENT OF THE ISSUES**

1. Whether this Court must grant defendant summary judgment with regards to the first and second counts of plaintiff's complaint, where the contract expressly required plaintiff to perform the work for which it now seeks additional compensation.

2. Whether this Court must dismiss the third count of plaintiff's complaint (declaratory relief) for lack of subject matter jurisdiction.

# STATEMENT OF THE CASE

## I. Nature of the Case

Plaintiff, Record Steel and Construction, Inc. ("Record Steel") brings this action pursuant to the Tucker Act, 28 U.S.C. § 1491, alleging constructive change and extra work. Specifically, Record Steel asserts that the contract that it entered into with the United States for the design and construction of a dormitory at Offutt Air Force Base, Nebraska did not require over excavation for foundation work, and that defendant's insistence that Record Steel over excavate was a constructive change/extra work under the contract. Compl. ¶ 12. Record Steel seeks an equitable adjustment in an amount not less than $188,380 and further seeks declaratory relief with regards to a performance evaluation issued by the Government. Compl. ¶¶ 16, 18, 21.

## II. Statement of Facts

The United States adopts the facts as set forth in its Proposed Findings of Uncontroverted Facts ("PFUF"), as summarized below.

On or about October 15, 1999, the United States Department of the Army, Corps of Engineers (the "Army Corps") issued a solicitation for a Design/Build Multiple Award Task Order Contract for Construction Services Primarily on Air Force Bases in the states of Washington, Oregon, Idaho, Montana, Wyoming, Colorado, North Dakota, South Dakota, Nebraska, Minnesota, Kansas, Missouri, Iowa, and Wisconsin (the "MATOC"). PFUF ¶ 1; App. 1. On or about November 23, 1999, Record Steel and Construction, Inc. ("Record Steel") submitted its proposal in response to the MATOC solicitation. PFUF ¶ 2; App. 2. On or about February 16, 2000, Record Steel was awarded one of three indefinite-delivery, indefinite-quantity

contracts pursuant to the MATOC solicitation (contract number "DACA67-D-0202"). PFUF ¶¶ 3,4; App. 2.

On or about June 9, 2000, the United States Department of the Army, Corps of Engineers, Omaha District (the "Army Corps") awarded Task Order #1, FY2000 Dormitory, Offut Air Force Base, Nebraska, under Contract No. DACA67-00-D-0202, to Record Steel at a basic contract award price of $8,799,428. PFUF ¶¶ 5-6; Compl. ¶ 4. The contract work involved the design and construction of the dormitory at Offut Air Force Base, Nebraska. PFUF ¶ 7; Compl. ¶ 4.

In Section 01005, "Structural Requirements," subparagraph 1.7.1, "Design Parameters," the Request for Proposals ("RFP") clearly provided that the "parameters used for foundation design, including **overexcavation** and compaction **requirements**, . . . **shall be in accordance with the Final Foundation Analysis report** provided." PFUF ¶¶ 8-10; App 12 (emphasis added). The Final Foundation Analysis report was attached to the RFP. PFUF ¶ 11; App. 12, 15-24. In a section entitled "Subsurface Recommendations," the report provided, in pertinent part:

> Due to the anticipated column loads for a multi-story building, it is believed that improving the site is more viable than reducing the bearing pressure to a very low value. Analysis utilizing replacement of a portion of the subgrade with engineered fill yielded acceptable movement, on the order of one inch, when four feet of in situ soil was replaced with compacted select material. The recommended improvement program is outlined below.
> . . .
> (b) Four (4) feet of material should be excavated from below the bottom elevation of all building footings.
>
> (c) **Over excavation** and replacement should extend a distance of at least four (4) feet beyond the outer edge of the footings.
>
> . . .

> (e) The **over excavation** depth should be backfilled with moisture conditioned select material meeting the following specification at a density of not less than 95% of maximum Modified density.

PFUF ¶ 12; App. 19-20 (emphasis added).

By a letter dated January 14, 2000, Record Steel submitted its price proposal for the RFP. PFUF ¶ 17; App. 43. In this letter, Record Steel advised that it did not believe that over excavation for the foundations would be required, but stated that it would perform over excavation if it was required, at no additional cost to the Government. PFUF ¶ 19; App. 43. In response to the Request for Final Revised Proposals issued by the contracting officer, Record Steel submitted a revised proposal dated March 12, 2000. PFUF ¶ 21; App. 44-51. The accompanying cover letter again stated, in pertinent part: "[w]e feel confident that over excavation for foundations will not be required. Should over excavation for the building foundations be required RSCI [Record Steel] will perform this work at no additional cost to the Government." PFUF ¶ 23; App. 44. In both letters, Record Steel also indicated that it intended to incorporate new borings into the design if awarded the contract. PFUF ¶¶ 20, 24; App. 43, 44.

On June 9, 2000, the contracting officer held a pre-design meeting with Record Steel. PFUF ¶ 25; App. 70. During this meeting, over excavation was discussed, and it was decided that Record Steel would have Great Plains Testing Laboratories ("Great Plains") conduct a field investigation of the site to provide information to the parties regarding over excavation. PFUF ¶ 26-27; App. 70. Great Plains conducted the investigation and provided a report on August 23, 2000. PFUF ¶ 28-29; App. 71.

During the 100% Civil and Structural Design review/60% "All Other Design" review, the contracting officer noted an apparent conflict between the RFP's over excavation requirement

and Great Plains' report which opined that native soil was sufficient to accept the building's footings. PFUF ¶ 30; App. 71. At the Design Review meeting held on October 3, 2000, the parties again discussed the issue and agreed that nuclear density testing would be conducted at the actual footing depth. PFUF ¶¶ 31-33; App. 71. The parties took samples for concurrent testing on October 6, 2000. PFUF ¶ 34; App. 71.

On October 10, 2000, Great Plains reported to Record Steel that its tests indicated that native soil was sufficient to accept the building's footings. PFUF ¶ 35; App. 71. On October 19, 2000, the contracting officer informed Record Steel that it was to comply with "the requirements of the subsurface recommendations of the Foundation Analysis Report." PFUF ¶ 36; App. 52. The contracting officer noted that the Army Corps had decided to enforce this requirement "due to the existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm." PFUF ¶ 37; App. 52. The contracting officer, however, did reduce the required density requirement from 95 percent to 92 percent of maximum modified density. PFUF ¶ 38; App. 52. A second letter was issued by the contracting officer on October 23, 2000, advising Record Steel that the over excavated soil could be reinstalled and compacted to meet the requirements of backfill under the footings after over excavation. PFUF ¶ 39; App. 53.

On April 25, 2002, Record Steel submitted a certified claim to the contracting officer, seeking $137,714 for additional costs allegedly incurred during the performance of Task Order #1 under Contract No. DACA67-00-D-0202. PFUF ¶ 40; App. 54-67. On September 16, 2002, the contracting officer sent a letter to Record Steel, setting forth the facts of the claim and inviting Record Steel to make any suggested corrections or additions to those facts. PFUF ¶ 41;

App. 68-69. Record Steel did not respond with any corrections or additions. PFUF ¶ 42; App. 71.

The contracting officer denied Record Steel's claim in a final decision dated November 7, 2002. PFUF ¶ 43; App. 70-72. The contracting officer concluded that the solicitation documents "included a requirement to over excavate the footing as part of the design and construction." PFUF ¶ 44; App. 71. He further noted that Record Steel's response to the solicitation had provided that if over excavation was necessary, it would be performed at no additional cost to the Government. PFUF ¶ 45; App. 70-71. The contracting officer observed that while Record Steel proposed a possible alternative to over excavation, which the Government had considered in good faith, the Government never executed a modification changing Record Steel's responsibilities under the contract. PFUF ¶ 46; App. 71-72. Thus, the contracting officer concluded that Record Steel " did no more work, in over excavating the foundations, than was explicitly required by the contract. There is, therefore, no basis upon which to find merit in your claim." PFUF ¶ 47; App. 72. Record Steel received the contracting officer's final decision on November 12, 2002. PFUF ¶ 48; App. 70.

On October 2, 2003, Record Steel filed its complaint with this Court. Defendant filed its answer on January 30, 2004.

## ARGUMENT

### I. Standards of Review

This Court has consistently held that when there is no genuine dispute regarding a material fact, and the moving party is entitled to judgment as a matter of law, a motion for summary judgment will be granted. See Paxson Elec. Co. v. United States, 14 Cl. Ct. 634, 642

(1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); accord Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A genuine dispute exists where the Court could render a verdict in favor of the non-movant, based upon the evidence. See Anderson, 477 U.S. at 248; Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

For the United States to prevail upon its motion for summary judgment, the Government only must demonstrate its entitlement to judgment as a matter of law, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 248. Here, there is no genuine dispute between the parties regarding any material fact, and upon the undisputed facts of record, the United States is entitled to judgment as a matter of law.

For the purposes of determining whether or not to grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the non-jurisdictional factual allegations of the complaint will be presumed true and read in the light most favorable to the plaintiff, but the burden of establishing the Court's jurisdiction nevertheless will remain squarely with the plaintiff. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof upon a motion to dismiss for lack of jurisdiction), aff'd, 292 F.3d 1383 (Fed. Cir. 2002). Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980).

## II. The United States Is Entitled To Judgment As A Matter of Law With Regards To The First And Second Counts Of Record Steel's Complaint Because The Contract Expressly Requires That Record Steel Excavate The Foundation.

Because the contract here required Record Steel to over excavate the foundation, plaintiff can have no claim for constructive change or extra work based upon the contracting officer's insistence that Record Steel over excavate the foundation. While the Government may be required to compensate a contractor if it orders the contractor to perform work that is not specified in the contract documents, the Government has no liability for constructive change/extra work if it merely is directing the contractor to perform in accordance with the terms of the contract. H.L.C. & Assoc. v. United States, 176 Ct. Cl. 285, 307, 367 F.2d 586, 599 (1966). See also Service Technicians, Inc. v. United States, 37 Fed. Cl. 383, 386 (1997).

Whether or not the contract required Record Steel to over excavate the foundation is a matter of contract interpretation. The interpretation of provisions of a Government contract generally is a matter of law. Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997 (Fed. Cir. 1996); Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993). Consequently, issues of contract interpretation are well suited to disposition by summary judgment. Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002); Hunt Constr. Group, Inc. v. United States, 48 Fed. Cl. 456, 459 (2001), aff'd, 281 F.3d 1369 (Fed. Cir. 2002). See also Stone Forest Indus. v. United States, 32 Fed. Cl. 424, 426 (1994) ("It is beyond dispute that the interpretation of the terms of a contract is a matter of law, not a matter of fact, and a court may properly order summary judgment on these issues") (citing Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991)).

Record Steel bases its claim of constructive change/extra work upon the assertion that the contract merely **recommended** over excavation but did not **require** over excavation. Compl. ¶ 6. The plain language of the RFP, however, does not support this assertion. It is well settled that "[c]ontract interpretation begins with the plain language of the agreement." Gould v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (citing Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 413 (Fed. Cir. 1988). See also Elden v. United States, 223 Ct. Cl. 239, 252, 617 F.2d 254, 260 (1980). The RFP explicitly states under "Structural Requirements" that the "parameters used for foundation design, including overexcavation and compaction requirements, . . . shall be in accordance with the Final Foundation Analysis report provided." App. 12. The Final Foundation Analysis report provides for over excavation as follows:

> Due to the anticipated column loads for a multi-story building, it is believed that improving the site is more viable than reducing the bearing pressure to a very low value. Analysis utilizing replacement of a portion of the subgrade with engineered fill yielded acceptable movement, on the order of one inch, when four feet of in situ soil was replaced with compacted select material. The recommended improvement program is outlined below.
> . . .
> (b) Four (4) feet of material should be excavated from below the bottom elevation of all building footings.
>
> (c) Over excavation and replacement should extend a distance of at least four (4) feet beyond the outer edge of the footings.
>
> . . .
>
> (e) The over excavation depth should be backfilled with moisture conditioned select material meeting the following specification at a density of not less than 95% of maximum Modified density.

App. 19-20.

There is nothing ambiguous about the RFP's language providing that the foundation design parameters "shall be in accordance with the Final Foundation Analysis Report." The word "shall" is traditionally treated as an imperative that mandates specific behavior. J.H. Miles & Co., Inc. v. United States, 3 Cl. Ct. 10, 13 (1983) (noting that Webster's New Collegiate Dictionary defines the word "shall" as "must; used to express a command; used in laws, regulations, or directives to express what is mandatory."). See also WEBSTER'S NEW COLLEGIATE DICTIONARY 1064 (1977). "In accordance with" similarly may be defined as in "agreement or conformity" with. Id at 8. Thus, the RFP expressly provides that foundation design parameters, including over excavation, must be in agreement with the Final Foundation Analysis Report. Record Steel is not entitled to any equitable adjustment merely because the Army Corps required that the foundation design parameters, including over excavation, must be in agreement with the Final Foundation Analysis Report, as explicitly required by the RFP.

Because the contract itself affords little support for Record Steel's thesis that it was not required to act in accordance with the Final Foundation Analysis report, Record Steel's complaint focuses upon the language of the Final Foundation Analysis Report, which describes its analysis as "recommendations." Compl. ¶ 6. However, although the Final Foundation Analysis Report describes its conclusions as "recommendations," the contract unambiguously takes these recommendations and transforms them into the required "design parameters" for foundation design. The previously prepared Final Foundation Analysis Report became a part of the contract only to the extent that the solicitation documents integrated the Report into the contract, and the Report was explicitly integrated into the contract as setting forth the design parameters "for foundation design, including overexcavation."

Further, the provisions of a contract must be interpreted to give reasonable meaning to all portions of a contract and the Court should avoid any interpretation "'which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.'" Gould, 935 F.2d at 1274 (quoting Arizona v. United States, 216 Ct. Cl. 221, 575 F.2d 855, 863 (1978))). To treat the Final Foundation Analysis Report's recommendations as non-mandatory would render Section 01005, "Structural Requirements," subparagraph 1.7.1, design parameters, wholly meaningless. Indeed, if the Final Foundation Analysis Report provides only "recommendations," then there are no actual "design parameters" for foundation design. If there are no "design parameters," there is no reason for the RFP to contain a section purporting to articulate "design parameters."

Finally, Record Steel expressly provided that "[s]hould over excavation for the building foundations be required, RSCI [Record Steel] will perform this work at no additional cost to the Government." App. 43, 44. While Record Steel did note that it believed that over excavation would prove unnecessary, and the Government in good faith considered modifying the contract, the Government never executed a modification changing Record Steel's responsibilities under the contract. Accordingly, Record Steel accepted the over excavation requirement. To the extent that the Court may find that Record Steel's proposal conflicted with the RFP, Record Steel expressly agreed that they understood "that in the case of any conflicts after contract award

between the requirements stated in the RFP and our proposal, the RFP shall govern."[1] PFUF ¶¶ 18, 22; App. 43, 44.

The RFP clearly and unambiguously mandates over excavation. Accordingly, the Government is entitled to summary judgment with regards to the first and second counts of Record Steel's complaint.

### III. The Court Lacks Tucker Act Jurisdiction To Entertain the Third Count (Declaratory Relief) of Record Steel's Complaint

In its complaint, Record Steel also asserts a claim for declaratory relief. Compl. ¶¶ 19-21. Specifically, Record Steel requests that this Court direct the Government to rescind its evaluation of Record Steel's performance under the contract and prepare a new evaluation. Id. ¶ 21. This Court, however, does not possess jurisdiction to consider claims for declaratory relief and, thus, the Court must dismiss the third count of plaintiff's complaint for lack of jurisdiction.

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Its jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions

[1] Record Steel's response mirrors the language of the RFP, section 01332, "Submittals During Design," paragraph 1.6.1, "Design Certification," which provides, in pertinent part, that "[t]he criteria specified in the RFP are binding contract criteria and in case of any conflict, after award, between the RFP criteria and Contractor's submittals, the RFP criteria will govern unless there is a written and signed agreement between the Contracting Officer and the Contractor waiving a specific requirement." PFUF ¶¶ 13-15, App. 29. Record Steel does not and cannot assert that there was ever any signed agreement waiving the over excavation requirement. PFUF ¶ 16.

placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. at 538. As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

The Court of Federal Claims generally does not have jurisdiction over claims for declaratory relief. See First Hartford Corp. v. United States, 194 F.3d 1279, 1294 (Fed. Cir.1999) (reaffirming that the United States Court of Federal Claims "cannot grant nonmonetary equitable relief such as an injunction or a declaratory judgment, or specific performance."). With certain strictly limited exceptions, there is no provision in the Tucker Act authorizing this Court to order equitable relief. See United States v. King, 395 U.S. 1, 4 (1969) ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'"). But see 28 U.S.C. § 1491(b)(2) (permitting the Court of Federal Claims to grant declaratory and injunctive relief in actions regarding government solicitations).

Accordingly, this Court should dismiss the third count of Record Steel's complaint for lack jurisdiction.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court grant the United States summary judgment with regards to the first and second counts of plaintiff's complaint, and dismiss the third count of plaintiff's complaint (declaratory relief) for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

May 6, 2004

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 6th day of May, 2004, a copy of the foregoing Motion for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice