Young/km/2566

October 19, 2000

Fort Crook Area

RSCI
1854 E. Lanark Street
Meridian, ID 83642

Gentlemen:

Reference Contract Number DACA67-00-D-0202, Task Order 1, FY 2000, Offutt AFB, Nebraska.

Your firm will not be issued notice to proceed for the footings on this project until your firm complies will the requirements of the subsurface recommendations of the Foundation Analysis Report. This is due to the existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm. Required density requirements will be reduced from 95% to 92% of maximum modified density.

Questions should be forwarded to Jennifer Young, (402) 293-2566.

Sincerely,

Steven R. Schmidt
Contracting Officer's
Representative

CF:
Schmidt
Kreisler
Young ✓
Flere
CENWO-PM-M (Stobbe)
55 CES (Shapland)
RSCI, at site

Young/km/2566

October 23, 2000

Fort Crook Area

RSCI
1854 E. Lanark Street
Meridian, ID 83642

Gentlemen:

Reference Contract Number DACA67-00-D-0202, Task Order 1, FY 2000, Offutt AFB, Nebraska.

This supplements our letter of October 19, 2000. Your firm may use the soil that is over excavated from below the footings as backfill.

Questions should be forwarded to Jennifer Young, (402) 293-2566.

Sincerely,

Steven R. Schmidt
Contracting Officer's
Representative

CF:
Schmidt
Kreisler
Young
Flere
CENWO-PM-M (Stobbe)
55 CES (Shapland)
RSCI, at site

RSCI

NV 0032585
ID 12164-AAA-1-3
WA RECORSO33QK

www.rscigroup.com

April 25, 2002

Serial No: 296-00002-00060

USACE Fort Crook Area Office
P.O. Box 13287, Bldg 525
Offutt AFB, NE 68113

MAY 6 '02

Attention: Steve Schmidt, Administrative Contracting Officer

Subject: FY 2000 Dormitory, Offutt.AFB, NE, DACA67-00-D-0202
Modification Request #011 Over Excavation for Building Footprint

Gentlemen:

This letter serves as documentation and background for the attached modification request PCO #011 and Certification of Claim of which RSCI notified the COE previously in serial letter 296-00002-00046. This request documents the direct and impacted costs due to the over excavation, delays due to forcing weather dependent work into inclement weather conditions and the extension of the project as outlined below.

RSCI stated in the letter accompanying our proposal on January 14, 2000 that "the borings taken for this project do no cover the area on the northern site and intend to incorporate new borings into our design if awarded this project. We feel confident that over excavation for foundations will not be required." This statement was based on information and guidance provided by a local geotechnical firm, Great Plains Testing Laboratories. At the pre-design meeting after award of the project the exclusion of over excavation was discussed and it was determined that RSCI would again employ Great Plains, this time to conduct a field investigation of the site to provide RSCI & COE with documentation that over excavation would not be needed. If this data were found to be satisfactory then RSCI would continue design without over excavation as proposed.

The independent site investigation was conducted by Great Plains under the direction of John Christiansen a registered professional engineer in the state of Nebraska. Included is a copy of the test results and conclusions and recommendations from this site investigation as submitted by Mr. Christiansen on August 23, 2000. Based on these findings RSCI continued with the design based on the use of native soil and no over excavation beneath the footings.

A limited Notice to Proceed for clearing, grubbing and grading was issued to RSCI on September 22, 2000 and this work commenced on the site September 25, 2000. During the 100% Civil & Structural/60% All Other design review Mr. Brad Jones of the COE raised the question of the conflict between the RFP recommendation to over excavate and the geotechnical recommendation to the contrary. The comment asked for the basis for this recommendation to not over excavate, which had already been provided in the Great Plains Investigation report, and did not state any disagreement with the decision. The issue was brought up again in the Design Review meeting conducted on October 3, 2000 at which both Mr. Jones and Mr. Christiansen were present and able to discuss the test results and recommendation. It was determined that Great Plains would conduct nuclear density testing of the native soil at actual footing



1854 E. LANARK STREET • MERIDIAN, ID 83642 • 208-887-1401 • 208-888-9130

THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA AGC

depth since the building footprint had been excavated and provide to Mr. Brad Jones, see attached copy that was sent to RSCI the following day. The COE was not satisfied with the results although the majority were in the mid 90% range and requested that additional samples be taken by Great Plains and provided to the COE for testing from actual footing depth. The samples were taken on October 6, 2000 due to a COE approved weather day on October 5, 2000. The COE and Great Plains took the samples to conduct concurrent testing with the promise of a quick decision upon completion of testing. Another limited NTP was issued for utility work on October 7, 2000 and stated "foundation work will be withheld until the soil issue is resolved."

Associated Brigham Contractors had been scheduled to arrive on site to begin work on October 5, 2000 on the basis that the over excavation did not appear to be a hold up prior to the design review meeting and were rescheduled to October 12, 2000 along with the rebar delivery. ABC was again reschudeled for October 16, 2000 awaiting test results and a decision by the COE. Great Plains testing was completed on October 10, 2000 and results again verified that the native soils were not collapse susceptible and were suitable to accept the building footings. Based on this information and without any information back from Mr. Jones a preparatory meeting was conducted with the COE on site and ABC for forming and placing the foundation on October 16, 2000 and one for footing excavation on October 17, 2000 with work for both of these phases beginning that same day.

On October 19, 2000 RSCI received a notice that we were to over excavate due to the "existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm" and reduced density requirements to 92%. RSCI responded with the attached letter, which includes the letter from Mr. John Christiansen stating that the results are in favor of not over excavating with all the substantiating data.

RSCI began the process of complying with the COE directive to over excavate by removing form work, moving all control points outside of over excavation limits and over excavating foundation soil. On October 23, 2000 RSCI received another letter from the COE supplementing their October 19, 2000 letter that the over excavated soil could be reinstalled and compacted to meet the requirement of backfill under the footings after the over excavation.

The NTP for foundations and foundation walls was received by RSCI on October 26, 2000. Over the 16 work days immediately following the COE directive to over excavate 7 of these were COE approved weather days which caused conditions in the foundation that were much worse on the over excavated areas than the native soil, as documented in photographs which can be made available. These conditions allowed only a small section of footing to be placed during this time period and caused ABC to abandon footings and work on the wall forming for this length of foundation to be able to work at all. ABC was not able to finish exterior footings until November 25, 2000 which caused the work on the walls to continue to push back and not be able to complete before the extreme cold and windy weather conditions that started on December 11, 2000 and continued causing RSCI to shut down the job for 2 weeks on December 19, 2000 after 4 of the last 6 days were COE approved weather days.

With the preliminary schedule and the more aggressive construction schedule that were provided the COE, completion of footings would have been completed prior to the two weeks of rain delayed work if allowed to start when originally scheduled without over excavation and utilizing the 6 day work week of ABC. With these footings completed work on the walls could have been continued although slowed during this time frame still allowing for the entire foundation to be completed prior to the next extreme weather period that forced the temporary job shutdown in December. This completion schedule could also have been kept with the durations as scheduled but with a slight variation in the sequencing of footing and wall work to accommodate the rain conditions with a more timely decision on the over excavation by the COE. With the delays that the over excavation and then the weather impacts, which the decision pushed the work into, the foundation was unable to be completed after resuming work again in January, 2001 until February 6, 2001 due to the continued effects of the extreme weather in December and January.

Using the longer activity durations of the preliminary schedule a completion date of December 8, 2000 could have been easily attained based on past experience by both RSCI and ABC as shown in the attached Without Over Excavation #1 and Without Over Excavation #2. With the over excavation and associated delays that pushed completion to February 6, 2001, as shown in the Actual Construction Schedule attached, there is a 60 calendar day extension to the completion of the project.

Sincerely,

FCR
Clayton Record
President, RSCI

CC: Jennifer Young, USACE

FAR 52.233-1 Disputes

Certification of Claim

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.

Clayton Record
President, RSCI

Brett Bishop
Project Manager, RSCI

MAY 14 2002

FAR 52.233-1 Disputes

Certification of Claim

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.

Clayton Record
President, RSCI

Brett Bishop
Project Manager, RSCI

# Record Steel and Construction Inc.

FY00 Design/Build Dormitory Project

Date: 4/12/02

Ref: COE Directed Overexcavation of Building

Scope Of Work:

Covers direct cost of overexcavation, down time & delays for Concrete Subcontractor, Costs associated with the winterization and dewatering to complete concrete placement, Costs associated with work to prep and place basement SOG.

## Estimate

### Direct Labor

| Item / Description | Quantity | Units | Manhours per Unit | Manhours | Rate | Total |
|---|---|---|---|---|---|---|
| Winterization/Dewatering (American Labor Force) | 1.0 | | | | | $ 914.18 |
| Winterization/Dewatering/Earthwork (Labor Ready) | 1.0 | | | | | $ 12,681.70 |
| | | | | | | $ - |
| | | Total Hours | | 0.00 | | |

Total Direct Labor $ 13,595.88

### Subcontract

| Item / Description | Quantity | Units | Cost Per Unit | Total |
|---|---|---|---|---|
| Overexcavation (Fucinaro) | 1.0 | | | $ 15,500.00 |
| Down Time and Rework (ABC) | 1.0 | | | $ 5,758.00 |
| Geotech Analysis & Testing (Great Plains) | 1.0 | | | $ 8,144.00 |
| | | | | $ - |

Total Subcontract $ 29,402.00

### Materials

| Item / Description | Quantity | Units | Cost per Unit | Total |
|---|---|---|---|---|
| Small tools/supplies @ 3% of RSCI direct labor | - | - | - | $ 407.88 |
| Propane, hoses, fittings (SAPP Bros) | 1 | | | $ 2,222.54 |
| Concrete Blankets, Reinforced Poly (Stetson) | 1 | | | $ 2,794.52 |
| | | | | $ - |

Total Materials $ 5,424.94

### Equipment

| Item / Description | Quantity | Hours Per Unit | Total Hours | Rental Cost Per Hour | Operating Cost Per Hour | Total |
|---|---|---|---|---|---|---|
| Pumps, Hoses, Fans (United Rentals) | 1.0 | | | | $ - | $ 1,688.74 |
| Tank, Heaters, Pumps, Hoses, Equipment (Neb. Rents) | 1.0 | | | | $ - | $ 17,079.71 |

Total Eqpt. $ 18,768.45

| | Total |
|---|---|
| | $ 67,191.27 |
| Field OH $844.80/day @ 60 Days | $ 50,688.00 |
| Home Office Overhead 11.12% | $ 13,108.17 |
| Profit on Subs @ 7.0% | $ 2,058.14 |
| Profit on Self-performed @ 10.0% | $ 3,778.93 |
| Bond 0.65 % | $ 889.36 |
| TOTAL COST THIS PROPOSAL — Total | $ 137,713.87 |
| TOTAL COST THIS PROPOSAL ROUNDED | $ 137,714 |

This proposal is good for 30 days. We reserve the right to make corrections to the pricing of the proposal for any errors or omissions.

Sheet 1

JOB 296 FY00 DORM, OFFUTT AFB
FIELD OFFICE OVERHEAD CALCULATION

| COST ITEM | MONTHLY RATE | DAILY RATE |
|---|---|---|
| Project Manager | $5,624.00 | $187.47 |
| Superintendent | $5,689.00 | $189.63 |
| CQCM | $5,343.00 | $178.10 |
| Construction Clerk | $872.00 | $29.07 |
| Subsistence | $3,000.00 | $100.00 |
| Temporary Phones | $860.00 | $28.67 |
| Temporary Toilets | $265.00 | $8.83 |
| Dumpster | $675.00 | $22.50 |
| Field Office | $586.00 | $19.53 |
| Field Office Supplies | $750.00 | $25.00 |
| Vehicles & Fuel | $1,680.00 | $56.00 |
| TOTAL | $25,344.00 | $844.80 |

Subcontractor Costs

| | | |
|---|---|---|
| Fucinaro | Overexcavate Foundation | $13,000.00 |
| ABC | Down Time & Re-Excavation | $5,758.00 |
| Great Plains | Geotech Testing & Analysis/Additional Testing | $8,144.00 |
| | | $26,902.00 |

American Labor Force & Labor Ready Invoices

| Invoice # | Cost |
|---|---|
| 11/17/00 | $914.18 |
| 70261610 | $130.00 |
| 1163466 | $988.00 |
| 1217695 | $143.00 |
| 1251017 | $897.00 |
| 1270889 | $1,254.50 |
| 1293309 | $877.50 |
| 1293310 | $404.25 |
| 77111610 | $588.00 |
| 77101610 | $520.00 |
| 77691610 | $630.50 |
| 77701610 | $117.60 |
| 30501876 | $182.00 |
| 78221610 | $135.98 |
| 78211610 | $445.25 |
| SubTotal | $8,227.76 |

| Invoice # | Cost |
|---|---|
| 78671610 | $425.75 |
| 79151610 | $578.50 |
| 80191610 | $631.15 |
| 80771610 | $780.45 |
| 81401610 | $1,805.88 |
| 82021610 | $378.53 |
| 82011610 | $687.20 |
| 82591610 | $742.36 |
| 82581610 | $656.51 |
| 83281610 | $492.45 |
| 83271610 | $370.50 |
| 84041610 | $1,003.29 |
| 84031610 | $656.50 |
| 84731610 | $764.40 |
| 84721610 | $614.25 |
| 85461610 | $975.00 |
| 85471610 | $643.13 |
| 86211610 | $1,147.26 |
| 86911610 | $1,040.00 |
| 87481610 | $968.50 |
| 88071610 | $624.00 |
| 88761610 | $975.00 |
| 89461610 | $500.50 |
| 62271612 | $78.00 |
| 90261610 | $234.00 |
| 62701610 | $1,066.00 |
| 91061610 | $1,612.00 |
| 91681610 | $604.50 |
| 92231610 | $773.50 |
| 63851610 | $318.50 |
| 92811610 | $676.00 |
| 39981112 | $95.60 |
| SubTotal | $22,919.21 |

| Description | Cost |
|---|---|
| Winterization/Dewatering to Foundation Completion | $8,227.76 |
| Extra Work for Backfill & SOG Prep 20% Time | $5,729.80 |
| Total | $13,957.56 |

| | |
|---|---|
| American Labor Force (11/17/00) | $914.18 |
| Labor Ready | $13,043.38 |
| Total | $13,957.56 |

Nebraska Rents Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 02016870 | 2 Heaters & Propane Tank | $702.90 |
| 02016868 | Backhoe & Compactors | $1,767.90 |
| 02018281 | Heater & Propane Tank | $372.75 |
| 02018279 | Heater | $262.50 |
| 02018869 | Heater & Propane Tank | $372.75 |
| 02018866 | Backhoe & Compactor | $1,757.25 |
| 02018865 | Heater | $262.50 |
| 02018864 | Forklift | $4,153.50 |
| 02019007 | Roller Compactor | $684.80 |
| 02019485 | Heater | $235.37 |
| 02019486 | Heater | $88.40 |
| 02019711 | Backhoe | $1,278.00 |
| 02019712 | Pump & Hoses | $435.75 |
| 02019993 | Skid Steer Loader | $1,874.25 |
| 02020075 | Skid Steer Loader | $427.33 |
| 02020273 | Skid Steer Loader | $640.07 |
| 02020491 | Pumps & Hoses | $641.55 |
| 02020636 | Pump & Hoses | $435.75 |
| 02020756 | Pumps & Hoses | $451.50 |
| 02021133 | Pump & Hoses | $115.50 |
| 02021120 | Pump & Hoses | $309.75 |
| 02023544 | Skid Steer Loader | $1,384.50 |
| 02023542 | Pump & Hoses | $519.75 |
| 02024015 | Pump | $165.90 |
| 02024350 | Skid Steer Loader | $591.08 |
| 02024478 | Skid Steer Loader | $1,384.50 |
| 02025433 | Concrete Bucket | $158.69 |
| 02025428 | Skid Steer Loader | $807.81 |
| 02025884 | Vibratory Compactor | $1,731.95 |
| | Total | $24,014.25 |

Ready Mixed Winter Service Charges

| Invoice # | Item Description | Cost |
|---|---|---|
| 5110018454 | Winter Service Charge | $10.50 |
| 5110018510 | Winter Service Charge | $51.00 |
| 5110018623 | Winter Service Charge | $250.50 |
| 5110018769 | Winter Service Charge | $16.50 |
| 5110018742 | Winter Service Charge | $88.50 |
| 5110018741 | Winter Service Charge | $180.00 |
| 5110018853 | Winter Service Charge | $24.00 |
| 5110018835 | Winter Service Charge | $46.50 |
| 5110018894 | Winter Service Charge | $9.00 |
| 5110019003 | Winter Service Charge | $49.50 |
| 1710013102 | Winter Service Charge | $99.00 |
| 5110019829 | Winter Service Charge | $627.00 |
| | Total | $1,452.00 |

Sapp Bros. Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 1543 | Propane | $79.88 |
| 15?? | Propane Hose | $508.20 |
| 24435 | Propane | $370.10 |
| 357596 | Propane | $273.15 |
| 24102 | Propane | $425.39 |
| 416400 | Diesel | $100.10 |
| 22627 | Propane | $206.06 |
| 418215 | Diesel | $80.03 |
| 22652 | Propane | $359.76 |
| 422362 | Diesel | $100.21 |
| | Total | $2,502.88 |

Stetson Building Products Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 871079 | Curing Blankets | $1,534.93 |
| 871856 | Reinforced Poly | $170.40 |
| 873542 | Curing Blankets | $613.97 |
| 882040 | Poly & Tape | $219.62 |
| 888528 | Reinforced Poly | $255.60 |
| | Total | $2,794.52 |

United Rental Invoices

| Invoice # | Item Description | Cost |
|---|---|---|
| 14005110-001 | Pump | $385.98 |
| 17408360-003 | Fans | $320.69 |
| 17542882-003 | Fans | $320.69 |
| 17542882-004 | Fans | $320.69 |
| 17542882-005 | Fans | $320.69 |
| | Total | $1,668.74 |

DEPARTMENT OF THE ARMY
CORPS OF ENGINEERS, OMAHA DISTRICT
106 SOUTH 15TH STREET
OMAHA, NEBRASKA 68102-1618

REPLY TO:

September 16, 2002

Office of Counsel

CERTIFIED MAIL
RETURN RECEIPT
REQUESTED

Mr. Clayton Record
RSCI
1854 East Lanark Street
Meridian, Idaho 83642

Dear Mr. Record:

I have reviewed your request for additional costs that you claimed were incurred during the performance of Contract No. DACA67-00-D-0202, FY 2000 Dormitory, Offutt AFB, NE. Your request seeks $137,714.00 for costs associated with over-excavation beneath the footings of the subject dormitory. This is not a final decision. You are invited to submit written comments that you have concerning my proposed findings. In addition, you are invited to attend a pre-Contracting Officer's Final Decision conference. This meeting would be held at your written request. The Contracting Officer or his designee would attend. If you desire to submit written comments to the proposed findings of fact, please direct your comments to the following address:

U.S. Army Corps of Engineers, Omaha District
ATTN: CENWO-OC (Thomas J. Ingram)
106 South 15th Street
Omaha, Nebraska 68102-1618

If you desire to attend a pre-Contracting Officer's Final Decision conference on this claim, please advise Mr. Ingram in writing. If you do not submit comments to the proposed findings, or request a pre-Contracting Officer's Final Decision conference by October 11, 2002, I will issue the Contracting Officer's Final Decision based on the facts at hand without benefit of your comments and concerns.

The proposed Findings of Fact are set forth below:

FINDINGS OF FACT

1. On June 9, 2000, the Corps of Engineers, Omaha District (hereinafter "the Corps"), awarded Contract No. DACA67-00-R-0007, Task Order #1 ("the contract") to RSCI at a (basic award) price of $8,799,428.00. The contract work involved the design and construction ("design-build") of a dormitory at Offutt AFB, Nebraska.

2. The RFP included a Foundation Analysis Report. Use of the Foundation Analysis Report was required by Section 01005, page 9, section 1.7.1, and the Report included a requirement to over excavate the footings as part of the design and construction.

3. By its letter of January 14, 2000, RSCI submitted its price proposal on the subject contract. RSCI advised at the time that it believed that over excavation for foundations was not required, but stated that if over excavation was required, it would be performed without additional cost to the Government.

4. RSCI advances the following argument, from its letter of April 25, 2002, in support of its request for an equitable adjustment:

a. The January 14, 2000 cover letter for RSCI's proposal indicated its belief that "over excavation for foundations will not be required." This statement was based upon information and guidance by RSCI's subcontractor, Great Plains Testing Laboratories.

b. At the pre-design meeting, the over excavation was discussed and it was determined that RSCI would have Great Plains conduct a field investigation of the site to provide further information to it and the Corps as to the necessity for over excavation.

c. Great Plains conducted the testing indicated above, and Mr. Christiansen of that firm provided a report on August 23, 2000, to the effect that in his opinion, it would be sufficient to continue with the design based on the use of native soil and without over excavation beneath the footings.

d. During the 100% Civil & Structural 60% All Other Design Review, the Corps noted the conflict between the RFP "recommendation" [RSCI April 25, 2002 letter] to over excavate, and the Great Plains geotechnical report to the effect that over excavation was not necessary. The issue was raised again at the October 3, 2000 Design Review meeting, and it was agreed that nuclear density testing would be conducted at the actual footing depth. Samples for concurrent testing were taken on October 6, 2000.

e. On October 10, 2000, Great Plains reported to RSCI that its tests indicated that the native soil was suitable to accept the building footings. On October 19, RSCI was notified by the Corps to over excavate due to the "existing soil conditions confirmed by our [the Government's] testing laboratory as well as the test data provided by your firm, and reduced the required density to 92%. A second Corps letter was issued shortly thereafter, advising that the over excavated soil could be reinstalled and compacted to meet the requirement of backfill under the footings after the over excavation.

f. By letter dated April 25, 2002, RSCI submitted a certified claim as described above.

Sincerely

Phillip E. Holman
Contracting Officer

DEPARTMENT OF THE ARMY
CORPS OF ENGINEERS, OMAHA DISTRICT
106 SOUTH 15TH STREET
OMAHA, NEBRASKA 68102-1618

RECEIVED
NOV 1 2 2002
RSCI

REPLY TO:

Office of Counsel

November 7, 2002

CERTIFIED MAIL
RETURN RECEIPT
REQUESTED

Mr. Clayton Record
RSCI
1854 East Lanark Street
Meridian, Idaho 83642

Dear Mr. Record:

I have reviewed your request for additional costs which you claimed were incurred during the performance of Contract DACA67-00-D-0202, FY 2000 Dormitory, Offutt AFB, Nebraska. Your request seeks $137,714 for costs associated with over-excavation beneath the footings of the subject dormitory. My determination is to deny your claim. This is my Final Decision.

My findings and determination on this claim are set forth below:

FINDINGS OF FACT

1. On June 9, 2000, the Corps of Engineers, Omaha District (hereinafter, "the Corps"), awarded Task Order #1 under the above referenced contract ("the contract") to RSCI at a (basic award) price of $8,799,428. The contract work involved the design and construction ("design-build") of a dormitory at Offutt AFB, Nebraska.

2. The RFP included a Foundation Analysis Report. Use of the Foundation Analysis Report was required by Section 01005, page 9, section 1.7.1, and the Report included a requirement to over excavate the footings as part of the design and construction.

3. By its letter of January 14, 2000, RSCI submitted its price proposal on the subject contract. RSCI advised at the time that it believed that over excavation for foundations was not required, but stated that if over excavation was required, it would be performed without additional cost to the Government.

4. RSCI advances the following argument, from its letter of April 25, 2002, in support of its request for an equitable adjustment:

a. The January 14, 2000 cover letter for RSCI's proposal indicated its belief that "over excavation for foundations will not be required." This statement was based upon information and guidance by RSCI's subcontractor, Great Plains Testing Laboratories.

b. At the pre-design meeting, the over excavation was discussed and it was decided that RSCI would have Great Plains conduct a field investigation of the site to provide further information to it and the Corps as to the necessity for over excavation.

c. Great Plains conducted the testing indicated above, and Mr. Christiansen of that firm provided a report on August 23, 2000, to the effect that in his opinion, it would be sufficient to continue with the design based on the use of native soil and without over excavation beneath the footings.

d. During the 100% Civil &Structural/60% All Other Design Review, the Corps noted the conflict between the RFP "recommendation" [RSCI April 25, 2002 letter] to over excavate, and the Great Plains geotechnical report to the effect that over excavation was not necessary. The issue was raised again at the October 3, 2000 Design Review meeting, and it was agreed that nuclear density testing would be conducted at the actual footing depth. Samples for concurrent testing were taken on October 6, 2000.

e. On October 10, 2000, Great Plains reported to RSCI that its tests indicated that the native soil was suitable to accept the building footings. On October 19, RSCI was notified by the Corps to over excavate due to the "existing soil conditions confirmed by our [the Government's] testing laboratory as well as the test data provided by your firm", and reduced the required density to 92%. A second Corps letter was issued shortly thereafter, advising that the over excavated soil could be reinstalled and compacted to meet the requirement of backfill under the footings after the over excavation.

By letter dated April 25, 2002, RSCI submitted a certified claim as described above.

5. On or about September 20, 2002, you received a letter from the Contracting Officer setting out the above-recited facts, with the invitation to make appropriate corrections or additions set forth. No reply was received.

DETERMINATION

6. The claim of RSCI is hereby denied for the reasons stated below.

a. RSCI was in possession of the solicitation documents, including Section 01005, subsection 1.7.1, which included a requirement to over excavate the footings as part of the design and construction.

b. RSCI stated in its January 14, 2000 letter, that if over excavation was required, it would be performed without additional cost to the Government.

c. RSCI proposed an alternative to this requirement in its January 14, 2000 letter, indicating its belief that over excavation for the foundations would not be necessary.

d. Neither this belief, nor the subsequent testing and analysis, relieved RSCI from the unambiguous obligation to conform to the specifications as written.

e. Both the Government and RSCI made efforts to re-evaluate the contract requirement for over excavation. Notwithstanding the Government's good faith consideration of RSCI's alternative

foundation design proposal, the Government did not agree to the proposal nor did the Government execute a modification altering RSCI's responsibilities pursuant to the contract.

f. RSCI did no more work, in over excavating the foundations, than was explicitly required by the contract. There is, therefore, no basis upon which to find merit in your claim.

## CONCLUSION

This is the final decision of the Contracting Officer. You may appeal within ninety days from the date you receive this decision by giving written notice to the Armed Services Board of Contract Appeals, Skyline 6, Room 703, 5109 Leesburg Pike, Falls Church, Virginia 22041-3201. You should also provide a copy of the notice to the Contracting Officer. The notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Claims Court within twelve months of the day you receive this decision.

The Board's rules provide for an Expedited Small Claims procedure and an Accelerated Claim Procedure. If you qualify and choose to proceed under either of the procedures, you should refer to the enclosed interim rules.

Sincerely,

Phillip E. Holman

Phillip E. Holman
Contracting Officer

Enclosure