**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RECORD STEEL AND CONSTRUCTION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2274C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(d)(1), of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following proposed findings of uncontroverted fact:

1. On or about October 15, 1999, the United States Department of the Army, Corps of Engineers (the "Army Corps") issued a solicitation for a Design/Build Multiple Award Task Order Contract for Construction Services Primarily on Air Force Bases in the states of Washington, Oregon, Idaho, Montana, Wyoming, Colorado, North Dakota, South Dakota, Nebraska, Minnesota, Kansas, Missouri, Iowa, and Wisconsin (the "MATOC"). App. 1.[1]

2. On or about November 23, 1999, Record Steel and Construction, Inc. ("Record Steel") submitted its proposal in response to the MATOC solicitation. App. 2.

3. On or about February 16, 2000, Record Steel was awarded an indefinite-delivery, indefinite-quantity contract pursuant to the MATOC solicitation. App. 2.

---

[1] "App. __" refers to the appendix to our motion for partial summary judgment.

4. The indefinite-delivery, indefinite-quantity contract that Record Steel was awarded pursuant to the MATOC solicitation was contract number "DACA67-D-0202." App. 1.

5. On or about June 9, 2000, the Army Corps awarded Task Order #1, FY2000 Dormitory, Offut Air Force Base, Nebraska ("Task Order #1") under contract number DACA67-D-0202 to Record Steel. Compl. ¶ 4.

6. The basic award price for Task Order #1 was $8,799,428. Compl. ¶ 4.

7. Task Order #1 involved the design and construction of a dormitory at Offut Air Force Base, Nebraska. Compl. ¶ 4.

8. Section 01005, of the Request for Proposals for Task Order #1 (the "RFP") was captioned "Structural Requirements." App. 4.

9. Subparagraph 1.7.1 of Section 01005 of the RFP was captioned "Design Parameters." App. 12.

10. Section 01005, subparagraph 1.7.1 of the RFP provides that the "parameters used for foundation design, including overexcavation and compaction requirements, . . . shall be in accordance with the Final Foundation Analysis report provided." App. 12

11. The Final Foundation Analysis report (the "Final Foundation Analysis") referenced in Section 01005, subparagraph 1.7.1 of the RFP was attached to the RFP. App. 12, 15-24.

12. In a section entitled "Subsurface Recommendations," paragraph 1.14 (entitled "Structural Foundations"), subparagraph 1.14.1 (entitled "Spread Footings on Engineered Fill"), the Final Foundation Analysis stated:

> Due to the anticipated column loads for a multi-story building, it is believed that improving the site is more viable than reducing the bearing pressure to a very low value. Analysis utilizing replacement of a portion of the subgrade with engineered fill yielded acceptable movement, on the order of one inch, when four

> feet of in situ soil was replaced with compacted select material. The recommended improvement program is outlined below.
> . . .
> (b) Four (4) feet of material should be excavated from below the bottom elevation of all building footings.
>
> (c) Over excavation and replacement should extend a distance of at least four (4) feet beyond the outer edge of the footings.
>
> . . .
>
> (e) The over excavation depth should be backfilled with moisture conditioned select material meeting the following specification at a density of not less than 95% of maximum Modified density.

App. 19-20.

13. Section 01332 of the RFP was captioned "Submittals During Design." App. 25.

14. Subparagraph 1.6.1 of section 01332 of the RFP was captioned "Design Certification." App. 29.

15. Section 01332, subparagraph 1.6.1 of the RFP provided that "[t]he criteria specified in the RFP are binding contract criteria and in case of any conflict, after award, between the RFP criteria and Contractor's submittals, the RFP criteria will govern unless there is a written and signed agreement between the Contracting Officer and the Contractor waiving a specific requirement." App. 29.

16. The Government never provided Record Steel with a signed agreement waiving the over excavation requirement.

17. By a letter dated January 14, 2000 (the "January letter"), Record Steel had submitted its initial price proposal in response to the RFP. App. 43.

18. In the January letter, Record Steel stated "[w]e understand that in the case of any conflicts after contract award between the requirements stated in the RFP and our proposal, the RFP shall govern." App. 43.

19. In the January letter, Record Steel stated "[w]e feel confident that over excavation for foundations will not be required. Should over excavation for the building foundations be required RSCI [Record Steel] will perform this work at no additional cost to the Government." App. 43.

20. In the January letter, Record Steel informed the contracting officer that it intended to incorporate new borings into its design if it was awarded the contract. App. 43.

21. In response to the Request for Final Revised Proposals issued by the contracting officer, Record Steel submitted a revised proposal on March 12, 2000 (the "March letter"). App. 44-51.

22. In the March letter, Record Steel stated "[w]e understand that in the case of any conflicts after contract award between the requirements stated in the RFP and our proposal, the RFP shall govern." App. 44.

23. In the March letter, Record Steel stated "[w]e feel confident that over excavation for foundations will not be required. Should over excavation for the building foundations be required RSCI [Record Steel] will perform this work at no additional cost to the Government." App. 44.

24. In the March letter, Record Steel informed the contracting officer that it intended to incorporate new borings into the design if it was awarded the contract. App. 44.

25. On June 9, 2000, the contracting officer held a pre-design meeting with Record Steel. App. 70.

26. During the pre-design meeting, over excavation was discussed. App. 70.

27. During the pre-design meeting, it was decided that Record Steel would have Great Plains Testing Laboratories ("Great Plains") conduct a field investigation of the site to provide information to the parties regarding over excavation. App. 70.

28. Great Plains conducted a field investigation of the site. App. 71.

29. On August 23, 2000, Great Plains issued a report containing an opinion by John Christiamsen that native soil could be used beneath the footings. App. 71

30. During the 100% Civil and Structural Design review/60% "All Other Design" review, the contracting officer noted the conflict between the RFP's over excavation language and Great Plains' report. App. 71

31. A Design Review meeting was held on October 3, 2000. App. 71.

32. At the October 3, 2000 Design Review meeting, the parties discussed the need for over excavation. App. 71.

33. At the October 3, 2000 Design Review meeting, the Army Corps and Record Steel agreed that nuclear density testing would be conducted at the actual footing depth. App. 71.

34. The Army Corps and Great Plains took samples for concurrent testing on October 6, 2000. App. 71.

35. On October 10, 2000, Great Plains informed Record Steel that its tests indicated that native soil was sufficient to accept the building's footings. App. 71.

36. By letter dated October 19, 2000, the contracting officer informed Record Steel that it "would not be issued notice to proceed for the footings on this project until your firm complies will [sic] the requirements of the subsurface recommendations of the Foundation Analysis Report." App. 52.

37. By letter dated October 19, 2000, the contracting officer asserted that the decision to require over excavation was "due to the existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm." App. 52.

38. By letter dated October 19, 2000, the contracting officer reduced the required density requirement from 95 percent to 92 percent of maximum modified density. App. 52.

39. By letter dated October 23, 2000, the contracting officer advised Record Steel that the over excavated soil could be reinstalled and compacted to meet the requirements of backfill under the footings after over excavation. App. 53.

40. By a letter dated April 25, 2002, Record Steel submitted a certified claim to the contracting officer, seeking $137,714 for additional costs allegedly incurred during the performance of Task Order #1 because of the over excavation. App. 54-67.

41. On September 16, 2002, the contracting officer sent a letter to Record Steel, setting forth the facts of the claim and inviting Record Steel to make any suggested corrections or additions to those facts. App. 68-69.

42. Record Steel did not respond with any corrections or additions. App. 71.

43. The contracting officer denied Record Steel's claim in a final decision dated November 7, 2002 (the "Final Decision"). App. 70-72; Compl. ¶ 14.

44. The Final Decision provided that the solicitation documents "included a requirement to over excavate the footing as part of the design and construction." App. 71.

45. The Final Decision noted that Record Steel's response to the solicitation had provided that if over excavation was necessary, it would be performed at no additional cost to the Government. App. 70-71.

46. In the Final Decision, the contracting officer observed that while Record Steel had proposed a possible alternative to over excavation, which the Government considered in good faith, the Government never executed a modification changing Record Steel's responsibilities under the contract. App. 71-72.

47. The Final Decision provided that Record Steel "did no more work, in over excavating the foundations, than was explicitly required by the contract. There is, therefore, no basis upon which to find merit in your claim" App. 72

48. Record Steel received the contracting officer's Final Decision on November 12, 2002. App. 70.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011
Steven.Mager@usdoj.gov

May 6, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 6th day of May, 2004, a copy of the foregoing "Proposed Findings of Unconverted Fact" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice