No. 03-2274C
Judge Lettow

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RECORD STEEL AND CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: June 7, 2004

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . 7

I. Record Is Entitled To Judgment As A Matter of Law That the Contract Does Not Require Over Excavation Because the Contract Unambiguously Provides That Over Excavation Is Recommended and Not Required . . . . . . . . . . . . 7

A. The Report Uses Equivocal, Permissive Language Regarding Over Excavation To Meet An Acceptable Settlement Design Requirement . . . . . . . . . . . . 8

B. The Report Used Permissive and Mandatory Language Intentionally, And Over Excavating Was Permitted, Not Required . . . . . . . . . . . . 10

II. Record Is Entitled to Summary Judgment That Over Excavation Was Not Required Because The Contract Is Latently Ambiguous . . . . . . . . . . . . 12

III. The Court Has Jurisdiction Under 28 U.S.C. § 1492(a)(2) To Provide the Declaratory Relief Requested in Count Three of Record's Complaint . . . . . . . . . . . . 14

A. The Court Has Jurisdiction Because the Declaratory Relief Record Requests Is Incidental and Collateral To Its Requested Money Judgment . . . . . . . . . . . . 15

B. The Court Has Jurisdiction To Render the Declaratory Relief Requested Because the Relief Was Sought From and Denied By the Contracting Officer's Representative . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

Alliant Techsystems, Inc. v. U.S., 178 F.3d 1260 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 17

Arens v. U.S., 969 F.2d 1034 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Austin v. U.S., 206 Ct. Cl. 719 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C. Sanchez & Son, Inc. v. U.S., 6 F.3d 1539 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Ellis v. U.S., 222 Ct. Cl. 65 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

GPA-I, LP v. U.S., 46 Fed. Cl. 762 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hills Materials Co. v. Rice, 982 F.2d 514 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

H.L.C. & Assoc. v. U.S., 367 F.2d 586 (Ct. Cl. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

HPI/GSA-3C, LLC v. Perry, 364 F.3d 1327, 2004 U.S. App. Lexis 7034 (Fed. Cir. Apr. 12, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Huston v. U.S., 956 F.2d 259 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

James v. Caldera, 159 F.3d 573 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Serv. Technicians, Inc. v. U.S., 37 Fed. Cl. 383 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Triax Pac., Inc. v. West, 130 F.3d 1469 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES** **PAGE**

28 U.S.C. § 1492(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

## INTRODUCTION

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff Record Steel and Construction, Inc. ("Record") files this opposition to defendant's motion for summary judgment and defendant's motion for dismissal of the third count of Record's complaint. In addition, pursuant to RCFC 56, Record files this cross-motion for summary judgment on the issue of whether the contract in this case required over excavation.

This case arises out of a design/build contract pursuant to which plaintiff Record Steel and Construction, Inc. ("Record") designed and constructed (under adverse conditions) a dormitory at Offutt Air Force Base, in Nebraska. The original value of the contract was approximately $8.8 million dollars. In this case, Record seeks an equitable adjustment in an amount not less than $188,380 for a constructive change and extra work occasioned by the government's directive that it over excavate the footprint of the dormitory's foundation footings. The contract between Record and the government unambiguously provides that over excavation and placement of engineered and re-compacted fill to support the dormitory's foundation is a design <u>recommendation</u>, <u>not</u> a design requirement. At most, the contract contains a latent ambiguity regarding whether over excavation was required, so Record's reasonable interpretation that it was not is controlling. For these reasons, Record is entitled to summary judgment on its cross-motion that the contract did not require over excavation. For the same reasons, the government thus constructively changed the contract, added to its requirements, delayed Record, and forced Record to perform extra work, and is not entitled to summary judgment. After all, this was a design / build contract. Record had the unqualified right to design the project; it was not required to stand by while the government usurped that function.

Count three of the complaint requests declaratory relief incidental and collateral to the money judgment Record requests in counts one and two. In addition, count three is based on a Contract Disputes Act ("CDA") claim for relief from the government's negative "Performance Evaluation." Record demanded that relief from the contracting officer's representative, and the contracting officer's representative denied the relief. For these reasons, the Court has jurisdiction to provide the relief requested in count three of the complaint pursuant to 28 U.S.C. § 1491(a)(2), and the government's motion to dismiss count three for lack of subject matter jurisdiction must be denied.

Record relies upon its complaint, the following memorandum, its response to defendants' proposed findings of uncontroverted facts, its proposed findings of uncontroverted facts, the Affidavit of Robert V. Stevens, P.E., and the attached appendix.

## FACTS

As indicated by Record's response to the government's proposed findings of uncontroverted facts, the parties do not dispute many of the facts relevant to their cross motions. Accordingly, Record will focus on the additional facts provided in its responses to defendant's proposed findings of uncontroverted facts and Plaintiff's Proposed Findings of Uncontroverted Facts ("PPFUF") and the few disputed facts that are relevant to the motion.

First, it is undisputed the Foundation Analysis Report (the "report") was incorporated into the Request for Proposals ("RFP"), and provided "parameters used for foundation design, including overexcavation," and that the RFP required that Record's design be "in accordance with" the report. However, the government's rendition of the facts leaves out key portions of the report that demonstrate that it plainly did not require over excavation, but, rather, at most,

recommended over excavation using equivocal language that mandates nothing. Specifically the report provides:

> 1.14.1 Spread Footings on Engineered Fill
> An analysis of undisturbed sample test data indicated that settlement governs the allowable bearing pressure of footings at this site. The settlement analysis predicted a footing movement greater than two inches with a nominal 2000 psf excess soil load on in situ material. Due to the anticipated column loads for a multi-story building, it is believed that improving the site is more viable than reducing the bearing pressure to a very low value. Analysis utilizing replacement of a portion of the subgrade with engineered fill yielded acceptable movement, on the order of one inch, when four feet of in situ soil was replaced with compacted select material. The recommended improvement program is outlined below:
>
> (a) An allowable bearing pressure of 2000 psf in excess of that due to the existing soil column should be used for design. Any load caused by fill added to the site above the current ground elevation should be subtracted from the bearing pressure.
> (b) Four (4) feet of material should be excavated from below the bottom elevation of all building footings.
> (c) Over excavation and replacement should extend a distance of at least four (4) feet beyond the outer edge of footings.
> (d) The exposed surface should be scarified, moisture conditioned, and recompacted to a density of not less than 95% of maximum Modified density for a depth of 12 inches.
> (e) The over excavation depth should be backfilled with moisture conditioned select material . . . . Loose lift thickness should not exceed 12 inches . . . .
> (f) Exposed subgrades should be backfilled in a timely manner and protected from excessive moisture loss or gain. In no instances should water be allowed to pond on or saturate the subgrade during construction. Footings should be placed and the area backfilled as soon as possible in order to protect the select backfill from moisture content change . . . .
> (h) Floor slabs should have a minimum of eighteen inches of compacted select material below the capilary water barrier layer.

PPFUF ¶ 12; App.[1] at 19-20 (emphasis added). As the emphasized language makes clear, in order to achieve an acceptable one inch of movement under anticipated loads, the government's report "believed" over excavation was "more viable," and thus "recommended" what the design "should" do. The report confirms that the point of over excavation is to achieve one inch or less of settlement in section 1.18:

> 1.18 Settlement
> Based on consolidation testing, Standard Penetration Tests results and experience with engineered fill, total settlement is not expected to exceed 1-inch if the over excavation and replacement program outlined above is followed. Differential settlement is not expected to exceed 0.5 inch.

(Emphasis added). The report also confirms that over excavation is not required, because it indicate what is expected "if," but not "when" the "over excavation and replacement programs" is followed. Use of "if" indicates that the report contemplated that over excavation might not be performed.

In clear contrast, however, when the report mandated an element of the design, it did not use equivocal language such as "anticipated," "it is believed," "more viable," "recommended," and "should." Rather, it used mandatory language, as follows:

> "A vapor barrier overlaying a six-inch capillary water barrier shall be required;"

> "lateral earth pressures on basement or retaining walls above the water table shall be calculated . . . . Lateral earth pressures below the water table shall be calculated . . . . An in situ soil dry density of 110 pcf shall be used for design purposes;"

---

[1] "App." refers to the appendix filed by defendant in support of its motion for summary judgment. "Plaintiff's App." refers to the appendix filed by Record supporting additional and disputed facts in opposition to defendant's motion and in support of Record's cross-motion.

> "a modulus of subgrade reaction "K" of 150 pci shall be used for design purposes. Flexible pavement designs shall use . . . . If frost penetration is considered in the design of rigid or flexible pavements, the design shall be in accordance with . . . ."

PPFUF ¶ 14; App. 20-21 (Report Sections 1.15, 1.16, & 1.17, respectively). In yet another clear contrast, some sections of the report use both permissive and mandatory language. "Therefore, sulfate-resistant cement will not be required" but "where possible, all concrete specifications shall include the option . . . ." PPFUF ¶ 14; App. 21 (Report Section 1.19). Likewise, the report provides:

> Maintain a minimum of 5 percent positive slope away from the building. Exit all downspouts at least 5 feet from building perimeter. Provide splash blocks for all exterior downspouts and water faucets. Avoid curbs and water traps adjacent to building. Footings shall be placed as soon as possible after foundation excavations are completed. Excavations should be backfilled as soon as possible and any ponded water in the excavations shall be removed immediately to prevent detrimental effects to the subsoils.

PPFUF ¶ 14; App. 21 (Report Section 1.21 ("Construction Details")).

Although the report's use of equivocal, permissive language regarding over excavation and mandatory language regarding other design parameters demonstrates that it unambiguously did not require over excavation as a design parameter, there is also no dispute of material fact that no engineer reading the report would have interpreted its express recommendation of what "should" be included in the design as an over excavation program as a design requirement. PPFUF ¶ 18; Affidavit of Robert V. Stevens, P.E. ¶¶ 4-6. In fact, in its price proposal in response to the RFP, Record indicated that it did not consider over excavation a design requirement, stating as follows:

> We would like to note that the borings taken for this project do not cover the area on the northern site and intend to incorporate new borings into our design if awarded this project. We feel confident that over excavation for foundations will

> not be required. Should over excavation for the building foundations be required RSCI will perform this work at no additional cost to the Government.

PPFUF ¶¶ 21, 24; App. 43, 44.

No reasonable engineer would assume that costly and potentially detrimental over excavation was a design requirement based on borings that undisputedly did not even cover the footprint for the building's foundation footings. PPFUF ¶ 18; Affidavit of Robert V. Stevens, P.E. ¶¶ 4-6 (The borings indicated a potential problem, but by using equivocal language and borings that were not where the building was to be constructed, the report indicated that additional investigation was necessary); PPFUF ¶¶ 21, 24; App. 43, 44 (borings not within building's footprint). Rather, any reasonable engineer would assume that the recommended over excavation program in the report would be part of the design only if the actual soil conditions required it, based on another, more complete and less equivocal geotechnical report. PPFUF ¶ 18; Affidavit of Robert V. Stevens, P.E. ¶¶ 4-6. Because the nature of the government's report, including the report's language and the fact that the borings were not within the footprint of the building, a designer reading the requirement that he design "in accordance with" the report would have read the report to mean that more investigation and analysis was required to address the potential problems disclosed in the report before deciding whether over excavation properly should be included in the design. PPFUF ¶ 18; Affidavit of Robert V. Stevens, P.E. ¶¶ 4-6.

Moreover, viewed in the light most favorable to Record, there is at least a dispute of material fact regarding whether even the government read the report as requiring over excavation. Record had Great Plains Testing Laboratories, Inc. ("Great Plains"), a local geotechnical engineering firm, take borings, conduct a field investigation of the actual site of the building, and recommend design features. In its August 23, 2000 report, Great Plains concluded

that over excavation was not required as a matter of sound engineering. PPFUF ¶ 29, Plaintiff's App. 1-34, 8. The government apparently was not convinced regarding whether over excavation was required as a matter of sound engineering, and so the parties agreed to conduct nuclear density tests at actual footing depth. PPFUF ¶¶ 30-33; App. 54-55, 71. Great Plains conducted the tests, and determined in its professional opinion that "the soils below footing level at the dormitory site are not collapse susceptible. In our professional opinion, dormitory foundations can safely rest on natural site soils, and overexcavation [sic] and recompaction of the soil below foundation level is not necessary." PPFUF ¶ 35, Plaintiff's App. 35-44, 36 (quoted language).

Ultimately, on or about October 19, 2000, the contracting officer decided to require over excavation "due to the existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm." App. at 52. Viewed in the light most favorable to Record, the contracting officer's statement demonstrates that not even the government, at this time, viewed over excavation as required by the contract. Instead, the government apparently concurred with Record's reading of the report – that over excavation was not required unless needed as a matter of sound engineering, and only disputed whether or not sound engineering required excavation. Accordingly, there is, at a minimum, a dispute of material fact regarding whether the report reasonably can be read as requiring over excavation to be part of Record's design.

## ARGUMENT

### I. Record Is Entitled To Judgment As A Matter of Law That the Contract Does Not Require Over Excavation Because the Contract Unambiguously Provides That Over Excavation Is Recommended and Not Required

Record agrees that interpretation of the provisions of a government contract is a matter of law, appropriate for summary judgment. And, of course, interpretation begins with the plain language of the contract. In this case, the RFP provides that:

> Parameters used for foundation design, including overexcavation and compaction requirements, the allowable soil bearing pressure, lateral earth pressure coefficients and design footing depths <u>shall be in accordance with</u> the Final Foundation Analysis report provided.

App. 12 (emphasis added). By using the word "shall," the parties' agreement clearly provides that Record's design was required to be "in accordance with" the report's "parameters." The question in this case is what the <u>report</u> required of Record's design, and what it merely recommended, but did not require, Record's design include. Put another way, the question is whether Record's design could be "in accordance with" the report without including over excavation.

The answer to this question can easily be found in the plain language of the report. Regarding many aspects of Record's design, the report uses mandatory language and thus, the be in accordance with those parameters, Record's design was required to include them. Regarding other aspects of Record's design, including over excavation of foundation footings, the report uses permissive and equivocal language, and thus Record's design can be "in accordance with" those "parameters" without including over excavation. As a result, Record is entitled to summary judgment that over excavation was not required by the contract.

### A. The Report Uses Equivocal, Permissive Language Regarding Over Excavation To Meet An Acceptable Settlement Design Requirement

As the language from section 1.14.1 of the report emphasized in the factual statement above and the PPFUF makes clear, the report unambiguously states that it "believed" that over

excavation was "more viable" because its "settlement analysis" "predicted" two inches of footing movement if the foundation was set on in situ soils. Thus, based on what the report "anticipated" in the way of column loads on a building not yet designed, the report "recommended" that over excavation "should" be performed. The report unambiguously confirms that it recommended over excavation in order to achieve one inch or less of settlement. Thus, in section 1.18 it states:

> Based on consolidation testing, Standard Penetration Tests results and experience with engineered fill, total settlement is not expected to <u>exceed 1-inch **if** the over excavation and replacement program outlined above is followed</u>. Differential settlement is not expected to exceed 0.5 inch.

(Emphasis added.) Accordingly, even viewed alone, the plain language of the report regarding over excavation states that over excavation is recommended "if" necessary, based on sound engineering, to achieve an inch or less of settlement. It cannot be read to require over excavation be part of the design if another design would achieve the same settlement result.

Of course, the plain language regarding settlement cannot be viewed in isolation from the rest of the report. When the report <u>mandated</u> an element of the design, it did not use equivocal language such as "anticipated," "it is believed," "more viable," "recommended," and "should." Rather, it used mandatory language, as follows:

> "A vapor barrier overlaying a six-inch capillary water barrier <u>shall be required</u> . . . ." Report Section 1.15, App. 20;
>
> "lateral earth pressures on basement or retaining walls above the water table <u>shall be calculated</u> . . . . Lateral earth pressures below the water table <u>shall be calculated</u> . . . . An in situ soil dry density of 110 pcf <u>shall be used for design purposes</u>." Report Section 1.16, App. 20;
>
> "a modulus of subgrade reaction "K" of 150 pci <u>shall be used for design purposes</u>. Flexible pavement <u>designs shall use</u> . . . . If frost penetration is considered in the

> design of rigid or flexible pavements, the design shall be in accordance with . . . ." Report Section 1.17, App. 21.

See also Report Section 1.19; App. 21 (sulfate-resistance cement "will not be required" while concrete specifications "shall include" another option); Report Section 1.21; App. 21.

**B. The Report Used Permissive and Mandatory Language Intentionally, And Over Excavating Was Permitted, Not Required**

Comparing the emphasized portions of the report establishes three propositions. First, for Record's design to be "in accordance with" the report, it was not required to do everything mentioned in the report. Rather, in places the report expressly states what "will not be required."

Second, the report knew how to express which design parameters were mandatory and which were recommended, but not required. The Report (1) uses both mandatory language such as "shall be" "required," "calculated," "used for design purposes," "in accordance with,"or "placed," and otherwise used commanding language such as "maintain," "exit," "provide," or "avoid;" and (2) uses permissive, equivocal, non-mandatory language such as "anticipated," "it is believed," "more viable," "recommended," "if," and "should." Using both mandatory and permissive language indicates that the report intended a difference. Arens v. U.S., 969 F.2d 1034, 1039 (Fed. Cir. 1992) (Coast Guard regulation used "shall" in one year and "may" in another, indicating that the mandatory language "was the result of a conscious decision"); Huston v. U.S., 956 F.2d 259, 262 (Fed. Cir. 1992) ("When, within the same statue, Congress uses both "shall" and "may," it is differentiating between mandatory and discretionary tasks.").

Third, over excavation unambiguously falls into the category of a recommended but not required design parameter. The report "anticipated" and "believed" that over excavation was "more viable" in order to achieve one inch of settlement, and thus "recommended" what

"should" be done as part of an over excavation program, and stated the result it believed would be achieved (one inch or less of settlement) "if" the program was followed. In contrast to those things the report does require, the report unambiguously does not require over excavation. The government's contrary interpretation simply cannot be squared with the report. It gives no meaning to the very different language the report uses repeatedly and explicitly when something is required and when something is not required. The government's interpretation simply equates dissimilar language, which cannot have been the intent of the report, and thus cannot be the plain meaning of the parties' agreement in this case.

Accordingly, the government is not entitled to summary judgment on plaintiffs' first and second claims for relief. To the contrary, Record is entitled to summary judgment on its cross-motion that over excavation was not required by the contract. As the government concedes, it is "required to compensate a contractor if it orders the contractor to perform work that is not specified in the contract documents." Defendants' Memorandum at 8, citing H.L.C. & Assoc. v. U.S., 367 F.2d 586, 599 (Ct. Cl. 1966) and Serv. Technicians, Inc. v. U.S., 37 Fed. Cl. 383, 386 (1997). While there may remain a dispute of material fact regarding whether over excavation was required as a matter of sound engineering practice,[2] that does not create a dispute of material fact regarding what the contract required. Record is entitled to summary judgment that the contract unambiguously did not require over excavation.

---

[2]Record does not concede that there is a dispute of material fact on this issue. The government's report does not include borings of the site where the building was built, and did not include nuclear density tests at footing depth. Great Plains' reports included both. Accordingly, Record reserves the right to file a motion for summary judgment contending that over excavation was not required as a matter of sound engineering, and that therefor the government ordered extra work despite Record's agreement that it would over excavate without charging the government if over excavation turned out to be required by site conditions.

///

///

**II. Record Is Entitled to Summary Judgment That Over Excavation Was Not Required Because The Contract Is Latently Ambiguous**

Assuming only for the sake of argument that the government's interpretation of the report as requiring over excavation is reasonable (which it is not), that creates only a latent ambiguity in the contract, which must be interpreted in Record's favor because the government drafted the contract. See C. Sanchez & Son, Inc. v. U.S., 6 F.3d 1539, 1544 (Fed. Cir. 1993); Hills Materials Co. v. Rice, 982 F.2d 514, 516-17 (Fed. Cir. 1992). The only exception to this rule is the "patent ambiguity" doctrine, which applies "where the ambiguities are so patent and glaring that it is unreasonable for a contractor not to discovery and inquire about them." HPI/GSA-3C, LLC v. Perry, 364 F.3d 1327, 2004 U.S. App. Lexis 7034, 16-17 (Fed. Cir. Apr. 12, 2004) (internal quotations omitted). However, "[b]ecause the [patent ambiguity] doctrine has the effect of relieving the government from the consequences of its own poorly drafted contracts, the doctrine has been applied only to contract ambiguities that are judged so patent and glaring that it is unreasonable for a contractor not to discover and inquire about them." Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997). Thus, an ambiguity can be patent only when the court can conclude as a matter of law that resolution of the ambiguity would require an unreasonable reading of inconsistent contractual provisions. Id. at 1474-75.

In this case, Record's reading of the report is, at a minimum, reasonable. There is no ambiguity about what the report requires, and what it only recommends unless dissimilar language is interpreted to have an identical meaning. Thus, reading over excavation as a recommendation, not a requirement, is a perfect example of a latent and not a patent ambiguity,

because no contractual provisions or language are inconsistent with one another on that reading. Put another way, any ambiguity can easily be resolved by giving the report's language its ordinary meaning. The words "anticipated," "believed," "more viable," "recommended," and "should" normally do not mean the same thing as "required" or "shall." Accordingly, Record's reading of the contract is reasonable, no unreasonable interpretation is required to resolve any ambiguity, any ambiguity is latent and not patent, any ambiguous terms must be construed against the government as drafter, and Record's reading of the contract "is therefore the dispositive interpretation" of the report. Hills Materials, 982 F.2d at 516-517 (holding that if there was any ambiguity, it was a latent and not patent ambiguity that had to be construed in the contractor's favor because "[the contractor's interpretation] is a reasonable interpretation of the contract. By its plain meaning, the word 'issued' in the past tense logically refers to regulations already issued, and not to changes which may occur in the future.")

Moreover, there is, at a minimum, a dispute of material fact that any reading other than Record's is reasonable. Viewed in the light most favorable to Record, the government read the report as requiring over excavation only if necessary as a matter of sound engineering: the government did not require over excavation because the contract requires it, but, rather, because in its opinion the soil investigations required it as a matter of sound engineering. PPFUF ¶ 37; App. 52 ("This is due to the existing soil conditions confirmed by our testing laboratory as well as the test data provided by your firm."). As a matter of logic, if both parties read the contract the same way (at least until Record requested an equitable adjustment), that reading is reasonable and the ambiguity (if any) is latent not patent.

When the government directs a contractor to do work beyond the contractor's reasonable interpretation of the contract upon which the contractor's bid was based, the direction "is properly treated as a constructive change." C. Sanchez & Son, 6 F.3d at 1544-45, 1545. In this case, it is undisputed that Record bid the contract on the basis that over excavation was not required by the contract, but, instead, might be required by ground conditions exposed by subsequent testing. Thus, Record's letters dated January 14, and March 12, 2000 provide:

> We would like to note that the borings taken for this project do not cover the area on the northern site and intend to incorporate new borings into our design if awarded this project. We feel confident that over excavation for foundations will not be required. Should over excavation for the building foundations be required RSCI will perform this work at no additional cost to the Government.

(Emphasis added). Record noted this fact to inform the government that its bid was based on including over excavation in its design only if required by subsequent geotechnical analysis, because the government's report, reasonably interpreted, only recommended, but did not require, that over excavation be included in the design. PPFUF ¶ 18; Affidavit of Robert V. Stevens, P.E. ¶¶ 4-6. Accordingly, Record's bid was based on its reasonable interpretation of the contract, and the government's October 19 directive went beyond Record's reasonable interpretation. Therefore, Record is entitled to summary judgment that the government's directive was a constructive change, unless the government can demonstrate that there is a dispute of material fact regarding whether or not over excavation was required as a matter of sound engineering.[3] C. Sanchez & Son, 6 F.3d at 1545.

## III. The Court Has Jurisdiction Under 28 U.S.C. § 1492(a)(2) To Provide the Declaratory Relief Requested in Count Three of Record's Complaint

---

[3]Record does not concede that there is a material dispute of fact on this issue, but, rather, reserves the right to move for summary judgment on this issue. See footnote two.

Record's third count requests that the Court direct defendant to rescind the contractor "Performance Evaluation" it issued pursuant to the contract. The purpose of requesting this relief is to provide an entire remedy and complete relief to Record as an incident of and collateral to its requested money judgment for constructive change and extra work. In addition, Record's third count requests that the Court render judgment on a claim for relief under the contract denied by the contracting officer's representative. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1492(a)(2) for two reasons: (A) because the relief is requested "as an incident of and collateral to" Record's requested money judgment; and (B) because the relief requests the Court to enter a judgment on a claim presented to and finally decided by the government under the Contract Disputes Act ("CDA").

**A. The Court Has Jurisdiction Because the Declaratory Relief Record Requests Is Incidental and Collateral To Its Requested Money Judgment**

The Court plainly has jurisdiction under 28 U.S.C. § 1492(a)(2) to order the requested relief of correction of the government's Performance Evaluation. 28 U.S.C. § 1492(a)(2) provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing . . . correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any . . . official with such direction as it may deem proper and just.

(Emphasis added). In order for the court to grant equitable relief under 28 U.S.C. § 1492(a)(2), "the equitable relief must be an incident of and collateral to a money judgment. Stated another way, the Court of Federal Claims has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment." James v. Caldera, 159 F.3d 573, 580 (Fed. Cir.

1998) (internal quotations and citations omitted); see also Ellis v. U.S., 222 Ct. Cl. 65, 69-70 (1979) ("But we do have such authority to issue a declaratory judgment where 'it is tied and subordinate to a monetary award.'") (quoting Austin v. U.S., 206 Ct. Cl. 719, 723 (1975)).

In this case, the government issued its contractor "Performance Evaluation" pursuant to the contract on December 9, 2002. Compl. ¶¶ 19-21; PPFUF ¶ 42; Plaintiff's App. 45-48. Record responded that, in part, the Performance Evaluation was related to delays caused by the government related to over excavation and the government's denial of Record's claim. Compl. ¶¶ 20-21; PPFUF ¶ 43; Plaintiff's App. 49-50. And, Record has alleged that the government's Performance Evaluation was related to that dispute. Compl. ¶¶ 20-21; PPFUF ¶ 44; Plaintiff's App. 49. In order for Record to be granted complete relief related to its claim for money damages based on the government's direction to over excavate, Record must be granted declaratory relief correcting the false Performance Evaluation inspired, apparently, by the dispute regarding over excavation. The Court has jurisdiction under 28 U.S.C. § 1491(a)(2) to order such relief.

### B. The Court Has Jurisdiction To Render the Declaratory Relief Requested Because the Relief Was Sought From and Denied By the Contracting Officer's Representative

Even if the declaratory relief Record requests is not an incident of, collateral to, tied to, or subordinate to the money judgment it seeks, either in whole or in part, the Court has jurisdiction under the remainder of 28 U.S.C. § 1491(a)(2). Specifically:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning . . . nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of the Act.

Id. For a contractor's communication to the government to be a CDA claim to which this statute refers requires "only that the contractor specifically assert entitlement to the relief sought. That is, the claim must be a demand for something due or believed to be due." Alliant Techsystems, Inc. v. U.S., 178 F.3d 1260, 1265 (Fed. Cir. 1999); see also GPA-I, LP v. U.S., 46 Fed. Cl. 762, 766 (2000) (quoting Alliant and citing Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1576 (Fed. Cir. 1995) (en banc) (a "claim" is "a written demand seeking a sum certain (or other contract relief) as a matter of right") (emphasis added)). In addition, "while CDA claims must request a contracting officer's final decision, a request for a final decision can be implied from the context of the submission." GPA-I, 46 Fed. Cl. at 767 (citing and quoting James M. Ellett Constr. Co. v. U.S., 93 F.3d 1537, 1542-43 (Fed. Cir. 1996)).

As just described above, the Contracting Officer's representative issued the "Performance Evaluation" "for this contract" on December 9, 2002. PPFUF ¶ 42; Plaintiff's App 45-48. Record responded on January 7, 2003, and requested, based on the facts regarding its performance of specific aspects of the contract, that "the marginal ratings be reevaluated and changed based on the information provided." PPFUF ¶ 43; Plaintiff's App. 50. On February 10, 2003, the Contracting Officer's representative responded that the relief requested would not be granted, despite Record's request. PPFUF ¶ 45; Plaintiff's App. 51. In sum, Record's January 7, 2003 letter claimed entitlement to the relief of a corrected Performance Evaluation, at least impliedly requested a final decision on the requested relief, and the government denied the relief. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1492(a)(2) to render judgment upon plaintiffs' claim that it is entitled to a corrected Performance Evaluation.

///

## CONCLUSION

Record is entitled to partial summary judgment on its cross-motion that the parties' agreement did not require that Record's design include over excavation. The report, on which the government relies, unambiguously does not require over excavation, but, merely recommends it. If the report is ambiguous, it is latently so, as Record's interpretation of the contract language is at least reasonable, while the government's is not, as indicated by the plain language of the report, the way a reasonable engineer would read the report, and the way the government read the report until Record filed its claim.

Record's request that its Performance Evaluation be correct is within the court's jurisdiction as collateral to the contract relief it requests, and because it submitted a CDA claim that was denied by the government.

Respectfully submitted,

s/ John Spencer Stewart

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: June 7, 2004

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706

W:\WORK\RBC\Record Steel\Offut\Pleadings\MemorandumCrossMSJ.wpd

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2004, a copy of the foregoing Opposition and Cross-Motion for Partial Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John Spencer Stewart

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: June 7, 2004

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706