No. 03-2274C
Judge Lettow

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

RECORD STEEL AND CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

ROBERT E. KIRSCHMAN, JR.
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

July 23, 2004

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

ARGUMENT . . . 2

I. Record Steel Fails To Demonstrate That The Contract Unambiguously Provides That Over Excavation Is Recommended, Not Required. . . . 2

II. The Contract is Not Latently Ambiguous. . . . 5

III. The Court Lacks Tucker Act Jurisdiction To Entertain The Third Count Of Record Steel's Complaint . . . 7

A. Record Steel's Request To Rescind The "Performance Evaluation" Does Not Fall Within This Court's "Incidental and Collateral" Jurisdiction. . . . 7

B. Record Steel's Request to Rescind The Performance Evaluation Does Not Fall Within the Scope of A "Claim" Pursuant To The Contract Disputes Act . . . 10

CONCLUSION. . . . 12

## TABLE OF AUTHORITIES

**CASES:** **PAGE(S)**


Alliant Techsystems, Inc. v. United States, 178 F.3d 1260 (Fed. Cir.) . . . . . . . . . . 11

Community Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d 1575 (Fed. Cir. 1993) . . . . . . . . . . 7

G. Bliuzius Contractors, Inc., ASBCA No. 42,365, 92-1 BCA ¶ 24,605 (Nov. 22, 1991) . . . . . . . . . . 11

Garrett v. General Electric Co., 987 F.2d 747 (Fed. Cir. 1993), reh'g denied, 186 F.3d 1379 (Fed. Cir. 1999) . . . . . . . . . . 11

Haskins v. United States, 51 Fed. Cl. 818 (2002) . . . . . . . . . . 9

Ho v. United States, 49 Fed. Cl. 96 (2001) . . . . . . . . . . 11

In re TLT Construction Corp., ASBCA No. 53,769, 02-2 BCA ¶ 31,969 (Aug. 26, 2002) . . . . . . . . . . 11

Interwest Construction v. Brown, 29 F.3d 611 (Fed. Cir. 1994) . . . . . . . . . . 6

James v. Caldera, 159 F.3d 573 (1998) . . . . . . . . . . 9

Jewelpak Corp. v. United States, 297 F.3d 1326 (Fed. Cir. 2002) . . . . . . . . . . 8

Konoike Construction Co., ASBCA 40,910, 91-3 BCA ¶ 24,170 (July 2, 1991). . . . . . . . . . . 11

Metz v. United States, 2004 WL 1474563 (2004) . . . . . . . . . . 9

Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir.1995) . . . . . . . . . . 10

Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375 (Fed. Cir. 2000) . . . . . . . . . . 6

Voge v. United States, 844 F.2d 776 (Fed. Cir. 1988) . . . . . . . . . . 9


**STATUTES AND LEGISLATIVE MATERIALS:**


Pub. L. No. 92-415, 86 Stat. 652 (1972) . . . . . . . . . . 7

28 U.S.C. § 1491(a)(2) . . . . . . . . . . 7, 9, 10, 12

28 U.S.C. § 1492 . . . . . . . . . . 7 n.1

S. REP. NO. 92-1006 (1972), reprinted in 1972 U.S.C.C.A.N. 3116. . . . . . . . . . . . . . . . . . . . . . 8, 9

**REGULATIONS**

48 C.F.R. § 52.233-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**MISCELLANEOUS:**

RCFC 7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RECORD STEEL AND CONSTRUCTION, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2274C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rules 7.1(c) of the Rules of United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits its reply to plaintiff's opposition to defendant's motion for partial summary judgment and to dismiss and response to plaintiff's cross-motion for partial summary judgment.

In our initial motion, we established that the United States was entitled to partial summary judgment on the complaint because over excavation was required under the contract at issue in this suit and, therefore, could not serve as the basis for the constructive change/extra work claims asserted by the plaintiff, Record Steel and Construction, Inc. ("Record Steel") in its complaint. Further, we established that this Court lacks jurisdiction to consider the third count of Record Steel's complaint. Record Steel's opposition fails to successfully rebut these arguments, and fails to establish that it is entitled to partial summary judgment.

Accordingly, we respectfully request that this Court grant the United States summary judgment with regards to the first and second counts of Record Steel's complaint, dismiss the

third count of Record Steel's complaint for lack of subject matter jurisdiction, and deny Record Steel's cross-motion for partial summary judgment.

## ARGUMENT

### I. Record Steel Fails To Demonstrate That The Contract Unambiguously Provides That Over Excavation Is Recommended, Not Required

Plaintiff's analysis of the contract at issue in this case focuses not upon the language of the Request for Proposals ("RFP"), but upon the language found in the Foundation Analysis Report. Record Steel's analysis, however, misses the basic point that the Foundation Analysis Report (the "Report") is only relevant to the extent that it is incorporated into the RFP. Under the section entitled "Structural Requirements," the RFP incorporated the Report to the extent that the "parameters used for foundation design, including overexcavation and compaction requirements, the allowable soil bearing pressure, lateral earth pressure, coefficients and design footing depth shall be in accordance with the Final Foundation Analysis report provided." App. 12 (emphasis added). Despite this explicit language and the clear reference to "overexcavation and compaction requirements," Record Steel argues that its design may be "in accordance with" the Final Foundation Analysis without including any over excavation whatsoever. Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. and Mot. to Dismiss & Pl.'s Cross-Mot. for Partial Summ. J. 8.

The RFP, however, explicitly integrates over excavation into the contract as a "requirement" and not a "recommendation." The Report cannot turn a "requirement" into a more flexible "recommendation," as the RFP is the source of the Report's authority in the first instance. Further, Record Steel could not be acting "in accordance with" the Report by acting contrary to

the Report's determinations regarding over excavation (which was specifically mentioned by the RFP).

The RFP itself distinguishes between "requirements" that "shall" be fulfilled by the contractor and those areas where the contractor has some measure of discretion. At the outset, subsection 1.1, entitled "Project Description and Requirements" provides that:

> The dormitory building will be a multi-story structure designed by the Contractor in accordance with the structural engineering criteria stated herein. In order to permit future remodeling, the wall between bedrooms and kitchen/bath areas shall be non-structural partitions which can be removed to provide more open floor space. In addition, it is preferred that walls between the two bedrooms within a unit, and the wall along one side of the corridor be non-structural partitions which can be removed to provide more floor space.

App. at 6 (emphasis added). Subsection 1.4, entitled "Structural Material," explicitly provides that "[m]aterials selection shall be at the Contractor's discretion, with the following limitations. . . ." App. 8 (emphasis added). Subsection 1.8.5, entitled "Concrete Floor Slab Finishes," notes that "[s]lab finishes in other portions of the building shall be left to the discretion of the contractor, subject to the approval of the Contracting Officer." App. 12 (emphasis added). Thus, the RFP explicitly notes where the contractor has a degree of discretion.

Still, and not surprisingly, subsections of the RFP that provide the contractor with even limited discretion are rare in the section generally focused on supplying the "Structural Requirements" of the contract. Most of the subsections in the "Structural Requirements" use the language "shall" or "shall be . . . in accordance" to mandate specific performance from the contractor. See generally App. 8-13. The language at issue here, similarly, mandated specific performance from the contractor. It did not provide that over excavation "shall be left to the contractor's discretion." It did not provide that over excavation was merely "preferred." Instead,

it stated the over excavation "requirement" "shall be in accordance with the Final Foundation Analysis Report." App. 12. This is not language that allows the contractor the discretion to decide not to over excavate.

Even presuming, however, that the language of the RFP may somehow be discounted, Record Steel premises much of its argument that the Report makes over excavation discretionary upon language in the Report that is irrelevant to the question of mandatory performance. Specifically, Record Steel notes that section 1.14.1 provides:

> An analysis of undisturbed sample test data indicated that settlement governs the allowable bearing pressure of footings at this site. The settlement analysis predicted a footing movement greater than two inches with a nominal 2000 psf excess soil load on in situ material. Due to the anticipated column loads for a multi-story building, it is believed that improving the site is more viable than reducing the bearing pressure to a very low value. Analysis utilizing replacement of a portion of the subgrade with engineered fill yielded acceptable movement, on the order of one inch, when four feet of in situ soil was replaced with compacted select material.

App. 8. Record Steel selects purportedly ambiguous language out of this analysis, noting that words such as "anticipated" and "belief" occur therein. While these words are in the section, they occur in the context of describing the Report's findings and analysis. They have nothing to do with whether over excavation would or would not be actually required under the Report.

Record Steel is correct to note that the foundation design section describes over excavation as part of a "recommended improvement program." And, indeed, the Report uses the word "should" to describe over excavation in section 1.14.1. But none of this language provides the contractor with the discretion to choose not to over excavate. "Should" may be used to describe "express obligation, propriety or expediency" or "what is probable or expected". WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1090 (1990). While this language is not

necessarily as mandatory as "shall," it is also far less permissive than "may," and does not amount to an affirmative grant of discretion. Indeed, while section 1.14.1 lists over excavation as part of a "recommended improvement program," elsewhere in the Report itself, over excavation is described as a "requirement." See App. at 20 (section 1.15) ("A vapor barrier overlying a six-inch capillary water barrier shall be required beneath all floor slabs on grade . . . . See the above section for over excavation and material requirements below floor slabs.") (emphasis added).

Such ambiguity, of course, is to be expected from the Report, as the Report itself could not make any mandatory pronouncements. Despite Record Steel's attempt to distinguish between "mandatory" portions of the Report and "discretionary" portions of the Report, nothing in the Report could be mandatory, unless and until the RFP integrated the document into the contract. Only then would the Report have any force or effect, and its force and effect was limited to the extent provided by the RFP. More specifically, over excavation was made a requirement by the specific language of the RFP and this requirement may not be waived by the language of the Report.

Accordingly, this Court should grant the United States summary judgment with regards to the first and second counts of Record Steel's complaint

## II. The Contract is Not Latently Ambiguous

In arguing that the contract was latently ambiguous, Record Steel again does not focus upon the language of the contract, but primarily concerns itself with the language of the Report. It is the language of the RFP, however, that is controlling, not the language of the Report. As we

have previously noted, the Report only becomes a part of the contract through the RFP's intergration of portions of the Report into the contract as requirements.

There is nothing ambiguous about the language of the RFP. The RFP explicitly provides that the "parameters used for foundation design, including overexcavation and compaction requirements, . . . shall be in accordance with the Final Foundation Analysis report provided." App 12.

Further, to the extent that there is any ambiguity created by the Report, such ambiguity would not be a latent ambiguity, but rather would be a patent ambiguity. Over excavation is specifically mentioned by the RFP. On its face, the contract describes over excavation as a "requirement." Assuming Record Steel is correct that the Report introduces an ambiguity by making this "requirement" into a non-mandatory recommendation, this would give rise to a glaring ambiguity, which a reasonable contractor should have discovered. Such a patently obvious ambiguity could only qualify as a patent, not latent, ambiguity. See Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1381 (Fed. Cir. 2000) ("A patent ambiguity is present when the contract contains facially inconsistent provisions that would place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties.")

The doctrine of patent ambiguity exists to insure that all parties bidding on a contract share a common understanding of the scope of the project, and protects both the United States from post-award claims of extra work and other Government contractors who may compete for the award of a contract. Interwest Construction v. Brown, 29 F.3d 611, 616 (Fed. Cir. 1994). A patent ambiguity allocates the risk of misinterpretation to the contractor, and raises a duty for the

contractor to clarify the contract prior to bidding. Community Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993). There is no evidence that Record Steel sought to clarify whether or not over excavation was a requirement under the contract prior to bidding.

Accordingly, this Court grant the United States summary judgment with regards to the first and second counts of Record Steel's complaint.

## III. The Court Lacks Tucker Act Jurisdiction To Entertain The Third Count Of Record Steel's Complaint

### A. Record Steel's Request To Rescind The "Performance Evaluation" Does Not Fall Within This Court's "Incidental and Collateral Jurisdiction"

Record Steel first argues that this Court possesses jurisdiction to entertain its request that the Court direct the United States to rescind its "Performance Evaluation" based upon the "incident of and collateral to" language of 28 U.S.C. § 1491(a)(2).[1] This argument, however, misinterprets the Court's "incident of and collateral to" jurisdiction.

The complete relevant text of this section of the Tucker Act provides as follows:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2) (emphasis added). This language was added to the Tucker Act by the 1972 amendments to the Act. See Pub. L. No. 92-415, 86 Stat. 652 (1972). The "applicable

[1] Plaintiff's brief cites to 28 U.S.C. § 1492(a)(2). The United States assumes that this is a minor typographical error, as there is no 28 U.S.C. § 1492(a)(2), and the relevant quoted language appears to come from 28 U.S.C. § 1491(a)(2). See 28 U.S.C. § 1492 (relating to congressional reference cases).

records" referred to in this section, however, have nothing to do with contractor performance evaluations. Indeed, put in its proper context, it becomes clear that the "correction of applicable records" refers to military and Federal employee records.

One of the basic cannons of statutory construction is "noscitur a sociis" (that is, "known from its associates"), which provides that a statutory term may be interpreted through an analysis of the meaning of associated words. See generally Jewelpak Corp. v. United States, 297 F.3d 1326, 1331 n. 3 (Fed. Cir. 2002) (explaining the principle of noscitur a sociis ). While noscitur a sociis is not an ironclad rule and serves merely as an aid to interpretation, it helps shed light on what sort of "applicable records" fall within this Court's jurisdiction under the 1972 amendments. Specifically, the phrase "correction of applicable records" is grouped with the phrases "restoration to office or position" and "placement in appropriate duty or retirement status." "Restoration to office or position" and "placement in appropriate duty or retirement status" have no connection to contract claims, but are directly related to Federal employee and military pay matters. Accordingly, the phrase "correction of applicable records" should be read as the correction of employee records, not contractor performance evaluations.

This interpretation is supported by the legislative history of this language and the case law. The Senate Report for the 1972 amendments to the Tucker Act that granted this Court the ability to direct the "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" makes clear that this portion of the amendments to the Act were intended to provide the Court with the ability to direct such relief where an employee has been discharged or in the context of military pay cases. See S. REP. NO. 92-1006 (1972), reprinted in 1972 U.S.C.C.A.N. 3116, 3117-18. The Senate Report specifically notes

that "the primary class of cases where a broader remedy is needed are suits filed on a money claim by a Government employee who alleges he was illegally discharged," and that the "second important classification where the present limits on the remedies available in the Court of Claims imposes unwarranted burdens on the litigant is cases involving military personnel." Id. The Senate Report addresses the need to extend the Court's jurisdiction to provide "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" only in the context of such cases. Id. See also Haskins v. United States, 51 Fed. Cl. 818, 822 (2002).

The 1972 amendments also added to the Tucker Act the portion of the statute that provides "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). The Senate Report only talks about contract claims in the context of the remand amendment. See S. REP. NO. 92-1006, reprinted in 1972 U.S.C.C.A.N. at 3118. The Report does not reference the amendments relating to "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" with regards to Government contracts. See id.

Consistent with the legislative history, the courts have generally only referenced the "incident of and collateral to" language of 28 U.S.C.§ 1491(a)(2) with regard to the Court of Federal Claims' authority to grant equitable relief in discharge and military pay cases. See, e.g., James v. Caldera, 159 F.3d 573 (Fed. Cir. 1998); Voge v. United States, 844 F.2d 776, 781 (Fed. Cir. 1988). We are not aware of any cases in which this Court has held that it possesses jurisdiction to direct an agency to rescind a performance evaluation pursuant to such language.

**B. Record Steel's Request to Rescind The Performance Evaluation Does Not Fall Within the Scope of A "Claim" Pursuant To The Contract Disputes Act**

Record Steel also argues that this Court possesses jurisdiction to direct the United States to rescind its "Performance Evaluation" because its previous request that the United States rescind the evaluation was a "claim" under the Contract Disputes Act (the "CDA"), and under 28 U.S.C. § 1491(a)(2), this Court possesses jurisdiction

> to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (emphasis added). However, a request for re-evaluation of a "Performance Evaluation" is not a "claim" arising under the CDA.

The CDA leaves the term "claim" undefined, and thus the Court must look to the Federal Acquisition Regulations ("FAR"), to determine what is necessary for a contractor's submission to be deemed a claim. Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995). The FAR broadly defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract." 48 C.F.R. § 52.233-1(c) (2003). Yet even this broad definition is not without its limits. Any relief sought must be made "as of right" and must be "arising from or relating to the contract". Record Steel's request, however, cannot meet this test.

The contractor has no contractual right to a specific performance evaluation. Record Steel does not allege in its letter or its complaint any contractual basis for a re-evaluation of its

marginal scores on the performance evaluation. Pl. App. 49-50. See Ho v. United States, 49 Fed. Cl. 96, 103 (2001) (Court rejected breach of contract claim because performance evaluations were prepared solely for the benefit of the Government). Indeed, since the performance evaluation consists merely of the collective subjective opinions of agency personnel, it is impossible to state that a contractor has the right to any particular opinion from such personnel, or that the Court possesses jurisdiction to require an agency to hold a particular opinion. Pl. App. 51.

Further, the Federal Circuit has held that the 1992 amendments that added the language to the Tucker Act providing for jurisdiction to consider such claims were intended to insure that the Court of Federal Claims had "jurisdictional parity" with the boards of contract appeals. Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1269-70 (Fed. Cir.) (citing Garrett v. General Electric Co., 987 F.2d 747 (Fed. Cir. 1993)), reh'g denied, 186 F.3d 1379 (Fed. Cir. 1999). The boards of contract appeals, however, have consistently held that they possess no jurisdiction to rescind performance evaluations, both prior to and after the 1992 amendments were implemented. See In re TLT Construction Corp., ASBCA No. 53,769, 02-2 BCA ¶ 31,969 (Aug. 26, 2002); G. Bliuzius Contractors, Inc., ASBCA No. 42,365, 92-1 BCA ¶ 24,605 (Nov. 22, 1991); Konoike Construction Co., ASBCA 40,910, 91-3 BCA ¶ 24,170 (July 2, 1991).

Indeed, the boards have specifically held that a request for review of a performance evaluation was not a claim under the Contract Disputes Act. See Konoike, ASBCA 40,910, 91-3 BCA ¶ 24,170. We are aware of no precedent providing that a request to amend a performance evaluation may serve as a CDA claim. But see Ho, 49 Fed. Cl. at 101-102 (asserting that the

Court has jurisdiction under 28 U.S.C. § 1491(a)(2) to remove "sham and dilatory materials" from the record, but dismissing the claim on summary judgment).

Accordingly, this Court should dismiss the third count of Record Steel's complaint for lack jurisdiction.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court grant the United States summary judgment with regards to the first and second counts of plaintiff's complaint, and dismiss the third count of plaintiff's complaint for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov
Attorneys for Defendant

July 23, 2004

**CERTIFICATE OF FILING**

I hereby certify that on this 23rd day of July, 2004, a copy of the foregoing Motion for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice