No. 03-2274C
Judge Lettow

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

RECORD STEEL AND CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**PLAINTIFF'S RESPONSE IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: August 6, 2004

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 1

I. Record Is Entitled To Judgment As A Matter of Law Because the Contract Unambiguously Provides That Over Excavation Is Recommended and Not Required . . . . . . . . . . 1

II. If the Contract Is Ambiguous, the Ambiguity Is Latent, Not Patent; Therefore, Record is Entitled to Summary Judgment . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

Arens v. U.S., 969 F.2d 1034 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Huston v. U.S., 956 F.2d 259 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Triax Pac., Inc. v. West, 130 F.3d 1469 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION

Plaintiff Record Steel and Construction, Inc. ("Record") respectfully submits its response in support of its cross-motion for partial summary judgment. Defendant argues in its reply that the Request for Proposals ("RFP") turned its Foundation Analysis Report's ("Report")[1] unambiguous recommendation that over excavation be performed into a "requirement" that over excavation be performed. Nothing could be further from the truth, as a plain language reading of the RFP demonstrates. Defendant also argues that because the Report used "should" instead of "may" in describing its over excavation recommendation, the Report makes over excavation a requirement. Again, nothing could be further from the truth, as "should" can also mean "if" as well as "ought," and, in any event, the Report uses "shall" when it wants to mandate a particular design. Finally, it there is any ambiguity, the ambiguity is latent, not patent.

For these reasons, the Court should grant Record's cross-motion for partial summary judgment and deny defendant's motion for summary judgment.

## ARGUMENT

### I. Record Is Entitled To Judgment As A Matter of Law Because the Contract Unambiguously Provides That Over Excavation Is Recommended and Not Required

Interpretation of the provisions of a government contract is a matter of law, appropriate for summary judgment. And, of course, interpretation begins with the plain language of the contract.

---

[1] The relevant sections of the RFP and Report are attached to defendant's appendix, at 4 – 14 and 15 – 21, respectively. For ease of reference, this memorandum cites to these documents by their respective section numbers.

Defendant's primary argument in opposition to summary judgment in Record's favor is that the RFP, in incorporating the Report, converted the Report's "recommendation" into a "requirement." According to defendant, the RFP did that by using the word "requirement" (1) in the table of contents' title for the section ("Structural Requirements"), and (2) in section 1.7.1 ("Parameters used for foundation design, <u>including overexcavation and compaction requirements</u> . . . .") (emphasis added).

Neither use of the word "requirement" carries the freight defendant suggests it does. In this case, the RFP, in a section entitled "PROJECT DESCRIPTION AND REQUIREMENTS" provides that:

> 1.1 PROJECT DESCRIPTION AND REQUIREMENTS
>
> The dormitory building [project] will be a multi-story structure <u>designed by the Contractor in accordance with the structural engineering criteria stated herein</u>. . . .

Accordingly, it is obvious that use of the word "requirement" in the RFP's section concerning "STRUCTURAL REQUIREMENTS" is not meant by itself to limit Record to any specific design. Rather, what Record is "required" to do based on the RFP's title headings using the word "requirement" is itself to design the building "in accordance with the engineering criteria stated herein." Put another way, except where otherwise explicitly stated, the RFP leaves the design up to Record, so long as Record's design is in accordance with the criteria stated in the remainder of the RFP. The RFP goes on to list all sorts of "engineering criteria," for example, in sections 1.2.1 – 1.2.7. While Record plainly was "required" to design in accordance with these sources, it obviously would not, and could not be "required" to do what these sources merely recommended. What if these sources recommended one of several solutions to a specific engineering problem?

In such a case, the "requirement" that Record design in accordance with the specific engineering criteria plainly would be satisfied if Record chose one of the options.

The RFP's use of the word "requirements" in section 1.7.1 is subject to the same analysis and same conclusion. Section 1.7 provides that "[d]esign of foundation components shall be the responsibility of the contractor." Accordingly, unless another part of section 1.7 provides differently, Record could design the foundation components as it saw fit. Next, subsection 1.7.1 provides "Design Parameters[.] Parameters used for foundation design, including overexcavation and compaction requirements, the allowable soil bearing pressure, lateral earth pressure coefficients and design footing depths shall be in accordance with the Final Foundation Analysis report provided." "Parameters," as used here, must mean "[l]imit, boundary – usually used in plural <the parameters of science fiction>." Merriam-Webster Online Dictionary definition of parameters (found at <m-w.com>). And "foundation components," the design of which is Record's responsibility, must "includ[e] overexcavation . . . requirements."

Thus, Record's foundation design is limited by and must be "in accordance with" the Report, and whatever "overexcavation and compaction requirements" are in it. Put another way, what the RFP plainly says is Record's design, including any requirements Record establishes for over excavation by including over excavation in its design, must be in accordance with the Report. The RFP does not turn the Report's design recommendations into requirements, or even claim that the Report has an over excavation requirement. Rather, the RFP simply says that any over excavation requirements in Record's design must be "in accordance with" the Report. Accordingly, the Court must determine whether the Report has an over excavation requirement. Relying on the RFP's use of the word "requirements" simply begs the question: Record was

"required" by the RFP to make sure the parameters of its design's over excavation requirements, if any, were in accordance with the Report. Thus, the question is what design would be "in accordance with" parameters in the Report.

As Record established in its opening memorandum in support of its cross-motion for summary judgment, the answer to this question can easily be found in the plain language of the report. Record will not repeat those arguments here, except to reply to defendants' argument concerning the meaning of "should." As defendants point out, should can mean "what is probable or expected." See Defendants' Reply Memorandum at 4; see also m-w.com at the 4th definition of "should." Given that the Report used equally equivocal and non-mandatory language when describing its "recommended improvement program" of over excavation, but used mandatory "shall" language for other aspects of design, the Report plainly did not mean "should" to mean the same thing as "shall." Using different words indicates a different meaning is intended. Arens v. U.S., 969 F.2d 1034, 1039 (Fed. Cir. 1992) (Coast Guard regulation used "shall" in one year and "may" in another, indicating that the mandatory language "was the result of a conscious decision"); Huston v. U.S., 956 F.2d 259, 262 (Fed. Cir. 1992) ("When, within the same statue, Congress uses both "shall" and "may," it is differentiating between mandatory and discretionary tasks."). If "shall" is meant to indicate a requirement, "should" must be meant to indicate something less than a requirement, i.e., a recommendation.

What is more, when the Report does use the word "should," it uses it in describing how to perform a "recommended improvement program." In other words, the Report says to the designer "if" you follow the recommendation "that improving the site is more viable than reducing the bearing pressure to a very low value" you "should" do it by over excavation. Report

§ 1.14.1. In sum, the Report does not say that the designer "shall" follow a particular improvement program that includes over excavation, it only says that "it is believed that improving the site [by over excavation, presumably, as subsequently described] is more viable" than other possible designs for the building's foundation. Report § 1.14.1.

Finally, defendant tries to turn the Report's "recommended improvement program" into a Report "requirement" because Report section 1.15, which concerns "Slabs on Grade" and the underlying "six-inch capillary water barrier," directs the designer to "[s]ee the above section for over excavation and material requirements below floor slabs." This one reference to over excavation as a requirement cannot convert a "recommended improvement program" into a requirement. Instead, there is nothing more than a direction to look for requirements in the "above section;" to the extent there are no requirements there, the designer will continue to have the discretion to design in accordance with the design criteria in the RFP.

This should come as no surprise, since the RFP's sections concerning slabs on grade and the capillary water barrier provide that "Interior slabs-on-grade shall be placed over a 6-mil polyethylene vapor barrier, and a granular capillary water barrier material not less than 6 inches compacted thickness . . . . Capillary Water Barrier material shall consist of clean, crushed, nonporous rock, crushed gravel, or uncrushed gravel as recommended in the Foundation Report." RFP §§ 1.8.2 & 1.8.2.1 (emphasis added). Accordingly, the RFP expressly states that the material to be used for the Capillary Water Barrier, which is found in the same section as the "recommended improvement program," is only recommended by the Report, and not required by the Report. Moreover, because the RFP sees fit to provide that this material shall be as recommended by the Report, it states as plainly as possible that other aspects of foundation

design that are recommended are not otherwise required. That is, if the recommended improvement program including the capillary water barrier already was required by the mandate that the parameters of Record's design be "in accordance with" it, the RFP would not provide that any aspect of the design "shall" be a certain way. Put another way, if section 1.7.1 (or any other part) of the RFP already had turned Report section 1.14.1 into a requirement instead of a recommendation, RFP section 1.8.2.1 is mere surplusage. That section, and others like it, however, plainly are not surplusage.

In sum, (1) the RFP only "requires" that the parameters of Record's foundation design, including any over excavation requirement in Record's design, be in accordance with the Report, (2) the RFP specifically refers to the "recommended improvement program" as a recommendation, not a requirement, and, (3) the RFP specifically states when Record's design shall follow aspects of the recommended improvement program. The aspect of the recommended improvement program "required" is not over excavation, but the recommended capillary water barrier material. The "recommended improvement program" was just that, recommended, and under the RFP, Record was free to design the foundation, responsible for designing the foundation, and limited only by the parameters of the Report. Accordingly, Record is entitled to summary judgment on its cross-motion, and defendant's motion for summary judgment must be denied.

## II. If the Contract Is Ambiguous, the Ambiguity Is Latent, Not Patent; Therefore, Record is Entitled to Summary Judgment

For all the reasons provided in Record's memorandum in support of its cross-motion for summary judgment, and the reasons provided above, the Court should conclude that the Contract

unambiguously provides that Record was free to design the foundation components, including any over excavation, so long as its design was in accordance with the Report's recommendations concerning over excavation. The RFP and Report did not require Record's design to include over excavation.

If the Contract is ambiguous, which it is not, any ambiguity is latent, not patent. The RFP does not "describe" over excavation as a requirement. It only requires that Record's foundation design be within the parameters of the Report, including any over excavation requirements in the Report. This is the way "requirement" is used throughout the RFP. For instance, section 1.1 of the RFP "requires" that the project be "designed by the Contractor in accordance with the structural engineering criteria stated herein."

In contrast, throughout the RFP, when the design of a particular feature of the project was mandated, the RFP used very different language. RFP subsection 1.8.2 is a perfect example. There, the RFP provides:

> Surfaces of interior concrete floor slabs, where not required [by Record's design or the stated design criteria, obviously] to be ramped or sloped for drainage, shall be flat within 1/8 inch when when measured over any 10 foot length with a straightedge. Interior slabs-on-grade shall be placed over a 6-mil polyethylene vapor barrier material not less than 6 inches compacted thickness. The vapor barrier shall be placed between the capillary water barrier and the slab.

This is level of specificity the RFP uses to mandate a specific design feature. See also, e.g., RFP §§ 1.8.2.1 – 1.8.6). To be consistent, if the RFP wanted to mandate the over excavation recommended by the Report, it would have said "Foundation footings shall be placed over soil improved by over excavation as recommended in the Foundation Report." Compare, e.g., RFP §§ 1.8.2 ("Interior slabs-on-grade shall be placed over . . .") and 1.8.2.1 ("Capillary Water Barrier

material shall consist of clean, crushed, nonporous rock, crushed gravel, or uncrushed gravel as recommended in the Foundation Report.").

Thus, the only way there is an ambiguity in this case is if language stating that Record shall design in accordance with certain design criteria or parameters is given a different meaning in section 1.7.1 of the RFP than it has elsewhere, and instead is given the same meaning as very different language used throughout the RFP when a specific design was mandated. Put another way, there are no facially inconsistent provisions of the RFP, such as there might be if the RFP said "you shall over excavate" in one section, and in another said "you shall design consistently with criteria that may or may not require over excavation." But as described in detail, the RFP says nothing like that. Rather, it says "Design of foundation components shall be the responsibility of the contractor," RFP § 1.7, but that the design, including any over excavation requirement, shall be in accordance with the Report. Accordingly, the patent ambiguity doctrine cannot apply: "Because the doctrine has the effect of relieving the government from the consequences of its own poorly drafted contracts, the doctrine has been applied only to contract ambiguities that are judged so 'patent and glaring' that it is unreasonable for a contractor not to discover and inquire about them." Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997).

Accordingly, for all the reasons stated in Record's memorandum in support of its cross motion for summary judgment, and for all the reasons stated here, any ambiguity is latent, and must be construed against the government. Accordingly, Record is entitled to summary judgment on its cross motion, and the Government's motion for summary judgment must be denied.

**CONCLUSION**

For the foregoing reasons, Record's cross-motion for summary judgment must be granted, and defendant's motion for summary judgment denied. The RFP unambiguously mandated that Record's design of the project's foundation be in accordance with the Report, and the Report unambiguously recommended, but did not require, over excavation. If there is any ambiguity, it is subtle in the extreme. In fact, finding an ambiguity requires that similar language be given a different meaning in RFP section 1.7.1 than it is given elsewhere in the RFP, and instead be given the same meaning as very different language found throughout the RFP. Such an "ambiguity" must be latent, and not patent, since it is not based on a facial inconsistency within the RFP, including the Report.

Respectfully submitted,

s/ John Spencer Stewart
John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: August 6, 2004

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706

W:\WORK\RBC\Record Steel\Offut\Pleadings\Memorandum.Response.CrossMotion.wpd

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2004, a copy of the Response In Support of Plaintiff's Cross-Motion for Partial Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John Spencer Stewart

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: August 6th, 2004

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706