No. 03-2274C
Judge Lettow

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

RECORD STEEL AND CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

---

John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: April 19, 2006

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706

## INTRODUCTION

Pursuant to the Court's Scheduling Order dated September 19, 2005, and RCFC App. A, ¶¶ 14-16, plaintiff Record Steel & Construction, Inc. ("Record") respectfully submits this Memorandum of Contentions of Law and Fact. The final pre-trial conference is scheduled for June 7, 2006 at 10:00 a.m., in Washington, D.C., and the five-day trial is scheduled to commence June 19, 2006 at 9:30 a.m. in the United States District Court in Omaha, Nebraska.

## I. Plaintiff's Concise Statement of Facts

Because this case is set for trial after the Court's decision on the parties' cross-motions for summary judgment, the background facts are well known to the Court and will not be at issue for trial. For context, however, Record begins its concise statement of facts with a brief recitation of the background and the Court's findings.

### A. Background and Summary Judgment Findings

This case arises out of a design/build contract pursuant to which Record designed and constructed a dormitory at Offutt Air Force Base, in Nebraska. At the beginning of the construction of the Project, the parties disputed whether over-excavation of the dormitory's foundation footings was necessary. Eventually, after a series of tests, reports, and recommendations, the government ordered Record to over-excavate for the dormitory's foundation footings on the basis that the contract required it.

On summary judgment, the parties disputed whether the contract between Record and the government required Record to over-excavate the dormitory's foundation footings. The Court decided that the contract was ambiguous, but that:

> Record Steel has satisfied the four elements of the *contra proferentem* rule. . . . Consequently, the ambiguity in the contract provisions regarding over-excavation must be construed against the government . . . . Record Steel is therefore entitled to a summary judgment that the contract between Record Steel and the government did not require over-excavation to be performed and that the government erred in construing the contract to provide that it did so require.

October 19, 2004 Slip Op. at 13.

The Court's decision on the cross-motions for summary judgment explicitly stated the issues remitted for trial. The Court stated:

> In light of the court's disposition of the cross-motions based upon the contractual language, the court does not now reach the question whether over-excavation was required as a matter of sound engineering . . . , or whether, and to what extent, the government is liable for any additional costs Record Steel may have incurred.

Id. (internal citation to Record's cross-motion omitted). Because a constructive change occurs whenever the government orders the contractor to perform work that is not specified in the contract documents, see C. Sanchez & Son, Inc. v. U.S., 6 F.3d 1539, 1545 (Fed. Cir. 1993), and the Court has concluded the contract did not require over-excavation, whether over-excavation was required as a matter of sound engineering is not a material issue at trial. Even if over-excavation was required as a matter of sound engineering, the contract did not require it and the order to over-excavate therefore constitutes a constructive change for which the government is liable. Further, the government did not raise the issue of whether sound engineering required over-excavation as an affirmative defense in its Answer.

**B. Facts Regarding Whether Sound Engineering Required Over-Excavation**

In the event the Court determines that the government can defend against liability by proving that over-excavation was required as a matter of sound engineering, Record will rebut the government's case by demonstrating the following facts:

It is now undisputed that the original borings taken for the Project by the government and provided to Record were not within the footprint of the dormitory, as sited. The government has mistakenly asserted, in the past, that the original borings were within the footprint of the dormitory. Record does not expect to have to prove that the original boring were outside the footprint of the dormitory, but will do so if the government indicates that it does not now concede the issue.

Record will prove at trial on rebuttal that it hired Great Plains Testing Laboratories, Inc. ("Great Plains," now merged with Thiele Geotech, Inc.), a local, well known, and respected geotechnical engineering firm, to perform soil borings, conduct a field geotechnical investigation of the actual site of the building, and to recommend an appropriate civil engineering design based on its investigations. That recommendation did not include over-excavation.

Record will prove at trial on rebuttal that in its August 23, 2000 report, Great Plains concluded that over excavation was not required as a matter of sound engineering.

Record will prove at trial on rebuttal that the parties agreed to conduct additional tests (including nuclear density tests at actual footing depth), that Great Plains conducted the tests, and that Great Plains once again determined in its professional opinion that over-excavation was not required as a matter of sound engineering.

Record will further prove through expert testimony at trial on rebuttal that over-excavation was not required as a matter of sound engineering.

Record will prove at trial on rebuttal that the Contracting Officer, in denying Record's claim concerning over-excavation, did not rely on or consider "sound engineering" as a basis for rejecting Record's claim. Instead, the Contracting Officer determined that "[Record] did no

more work, in over excavating [sic] the foundations, than was explicitly required by the contract. There is, therefore, no basis upon which to find merit in your claim."

Record expects that if the Court determines the issue of whether sound engineering required over-excavation to be material, the government will rely on expert testimony of its own in attempting to bear its burden that over-excavation was required as a matter of sound engineering. Record has not deposed the government's experts. Record's position is that, as stated above, of the issue is found to be material, over-excavation was not required as a matter of sound engineering.

**C. Facts Regarding Record's Damages**

Record believes it is undisputed, and does not expect to prove at trial, that the government ordered it to over-excavate for the dormitory's foundation footings. If the government does not concede the issue, Record will prove at trial that the government ordered Record to over-excavate for the dormitory's foundation footings. Among other things, the government "[a]dmits that defendant directed plaintiff to comply with the contractual requirement for overexcavation [sic]," in its Answer, ¶ 11.

Record will prove at trial that it was prepared to begin work on the foundation on October 3, 2000, but that the government delayed Record from beginning work on the foundation until October 26, 2000, while it considered whether it would require over-excavation. Record will prove that the primary government-caused delay continued until October 26, 2000, when the government issued Record a notice to proceed with the foundation work.

Record will prove at trial that because of the government's delay in determining that it would require over-excavation, completion of the foundation was delayed from the scheduled

completion date of December 8, 2000 until the actual completion date of February 6, 2001. Record will prove that this total delay was caused by: (a) the period of time the government took to determine that it would require over-excavation; (b) the extra time required to accomplish the over-excavation related work; and (c) the late start on the foundation caused by (a) & (b), which forced Record to build the foundation under very adverse weather conditions instead of fine early fall weather, resulting in additional days of delay. Record will prove that each element of the total delay was proximately caused by the government's delay in ordering over-excavation and the order to over-excavate itself.

Record will prove at trial that the foundation was on the critical path of the dormitory. Record believes, based on conversations between counsel, that the government will not contend otherwise.

Record will prove at trial that the following damages were caused by the government's order to over-excavate:

(1) Record's costs of performance were increased by $28,902.00 paid to subcontractors, which amount is made up of $15,000 paid to the excavation subcontractor, $5,758 paid to the concrete subcontractor, and $8,144 paid to Record's geotechnical engineer;

(2) Record's costs of performance were increased by $13,957.56 in direct labor costs for winterization and dewatering;

(3) Record's costs of performance were increased by $7,168.13 in materials needed for over-excavation or to allow foundation work to proceed during very adverse weather conditions;

(4) Record's costs of performance were increased by $25,702.99 in equipment rental costs required for over-excavation or to allow foundation work to proceed during very adverse weather conditions;

(5) Record's costs of performance were increased by $80,050.80 in field overhead, based on (a) daily field overhead of $1,334.18 per day, (b) multiplied by the 60 days delay caused by the government;

(6) Record's costs of performance were increased by $47,770 in unabsorbed home office overhead caused by the government's delay, based on (a) a daily allocable home office overhead rate of $795.63 (based on proof from Record's accounting records of contract billings, total billings for the contract period, total overhead for the contract period, and days of contract performance), (b) multiplied by the 60 days delay caused by the government;

(7) Record is entitled to 7.0% profit on its subcontractor's work, in the amount of $2,023.14, and Record is entitled to 10% profit on its self-performed work, in the amount of $17,457.95; and

(8) Record's costs of performance were increased by $1,449.26 it paid for a Miller Act Bond to cover the increased costs of the work caused by the government's requirement to over-excavate.

Record will prove at trial that the delay caused by the government was of uncertain duration, that the delay caused by the government extended the original time for performance of the Project, and that Record was on standby during the delay and unable to take on other work.

Record will also prove at trial that it is entitled to additional time to perform the contract, in an amount equal to the delay caused by the government's order to over-excavate, and thus entitled to a remission of liquidated damages claimed by the government.

Record is unaware of what facts the government will rely upon in asserting that Record's damages are not what Record's evidence shows them to be, and therefore cannot state its "position with respect to the facts on which defendant is expected to rely." RCFC App. A. ¶ 14(a)(1). Record has provided the government with a detailed letter regarding its damages in an effort to settle the case, but has not had a written response regarding the government's position on Record's damages.

**D. Facts Regarding the Government's Adverse Performance Evaluation**

Record will prove at trial that the government lacked basis for the "marginal" scores in the government's performance evaluation of Record. Record will prove at trial that the "marginal" scores were in retaliation for the Record making a claim regarding the order to over-excavate.

## II. Statement of Issues of Fact and Law to Be Resolved by the Court

### A. Statement of Issues of Fact to Be Resolved by the Court

Record believes that there are only two issues of fact to be resolved by the Court:

(1) What is the amount of Record's damages? The damages issue is, of course, comprised of sub-issues of fact created by the law on entitlement. The sub-issues are as follows:

(a) How many days delay was caused by the government;

(b) Was the delay of uncertain duration;

(c) Did the delay extend the original time for performance of the Project;

(d) Was Record on standby during the government's delay, and unable to take on additional work during the delay period; and

(e) The amounts of the subcategories of damages discussed in Section I(C)(1)-(8), above.

(2) Did the government have any basis for the "marginal" scores in its adverse performance evaluation, and/or were the "marginal" scores in retaliation for Record's claim?

In the event the Court finds that the government can raise its "sound engineering" affirmative defense, there is a third issue of fact to be resolved by the Court:

(3) Has the government shown, by a preponderance of the evidence, that sound engineering required over-excavation?

**B. Issues of Law to Be Resolved By the Court**

Record does not believe that there are any issues of law to be resolved by the Court. See RCFC App. A., ¶ 14(a)(2).

When the government orders a contractor to perform work that is not required by the contract, the government works a constructive change, and is liable to the contractor for the costs thereof. C. Sanchez & Son, Inc. v. U.S., 6 F.3d 1539, 1545 (Fed. Cir. 1993). Record believes the government concedes this rule of law.

The legal rule regarding damages for delay can be found in Wilner v. U.S., 24 F.3d 1397, 1401 (Fed. Cir. 1994). Record bears the burden of showing: (1) the extent of the delay, (2) that the delay was proximately caused by the government; and (3) the damages caused by the delay. Id. Frequently, there is a question in delay cases concerning whether the work delayed was on the "critical path" of the construction project, such that a day of delay to the work delayed causes

a day of delay in the completion of the project. Id. In this case, the work delayed was the work on the dormitory's foundation footings. Foundation work clearly is on the critical path. Record does not believe that the government will contend that a different legal standard will apply.

The legal rule for Eichleay unabsorbed home office overhead damages can be found in Nicon, Inc. v. U.S., 331 F.3d 878, 882-83 (Fed. Cir. 2003). The Court stated there that:

> Before using the Eichleay formula [set forth immediately above in Nicon] to quantify an amount of damages, the contractor must meet certain strict prerequisites for the application of the formula. First there must have been a government-caused delay of uncertain duration. The contractor must also show that the delay extended the original time for performance or that, even though the contract was finished within the required time period, the contractor incurred additional costs because he had planned to finish earlier. Finally, the contractor must have been on standby and unable to take on other work during the delay period.

Record does not believe the government will contend that a different standard legal standard applies.

Regarding Record's claim for a declaratory judgment reversing and/or revising the government's adverse performance evaluation, the Court has determined that it has jurisdiction to decide the claim pursuant to the CDA. The Court has, after briefing by the parties, determined that the standard of review will be de novo review. Record does not believe that there are any issues of law relating to this claim for the Court to decide.

## III. Discussion of Applicable Legal Principles

Record enunciated the legal principles it contends are applicable to this case immediately above, in Section II(B). Record does not anticipate that the government will contend that different legal principles apply, with the following two exceptions.

First, Record believes that the government will contend that whether over-excavation was required as a matter of sound engineering is a material issue. Whether over-excavation was required as a matter of sound engineering is not a material issue. The Court has determined that over-excavation was not required by the contract, and that determination demonstrates that the government ordered a constructive change for which it is liable. C. Sanchez & Son, Inc. v. U.S., 6 F.3d 1539, 1545 (Fed. Cir. 1993). Moreover, the government failed to raise the issue of whether sound engineering required over-excavation as an affirmative defense, likely because the Contracting Officer did not consider it in rejecting Record's claim. Because the issue of whether sound engineering required over-excavation is not a material issue, Record objects to the government's expert witnesses, and exhibits upon which the government's expert or fact witnesses intended to rely in testifying that over-excavation was required as a matter of sound engineering.

Second, the government has voiced its disagreement with Record's position that the Court has jurisdiction to decide Record's claim related to the government's adverse performance evaluation. However, because the Court already has decided that issue, Record doubts there will be any dispute at the trial regarding the legal principles applicable to this claim.

Record does not object to any non-expert witness or exhibit listed by defendant, provided, however, that Record preserves the right to raise evidentiary objections to particular testimony (e.g., hearsay, lack of qualification of experts allowed to testify) and exhibits (e.g., lack of foundation). Counsel for Record and the government have previously discussed stipulating, so far as possible, to the admissibility of exhibits, so that the Court can receive a set of exhibits to which neither party will object.

## IV. Bifurcation of Issues for Trial

Record does not believe that bifurcation of issues for trial is appropriate. Record believes that there is no issue of liability left to bifurcate from the issue of damages. Record continues to believe that this case should be settled prior to trial because there is no issue regarding liability, and because Record anticipates that the government will have limited evidence to dispute Record's evidence regarding damages.

## CONCLUSION

As required by RCFC App. A, ¶¶ 15 & 16, Record is filing contemporaneously herewith separate statements (1) setting forth the list of exhibits Record expects to offer at trial for case-in-chief or rebuttal purposes and (2) setting forth the witnesses Record will and may present at trial. Record continues to believe that this case should settle prior to trial. If it does not, Record looks forward to the June 7, 2006 pretrial conference, and to beginning the trial on June 19, 2006.

Respectfully submitted,

s/ John Spencer Stewart
John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: April 19, 2006

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2006, a copy of the foregoing Plaintiff's Memorandum of Contentions of Fact and Law was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

s/ John Spencer Stewart
John Spencer Stewart
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706; (503) 419-0281

Dated: April 19, 2006

Of Counsel:

Robert B. Coleman
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Telephone: (503) 221-0699
Fax: (503) 223-5706